THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CURTIS WELLS, Plaintiff in Error.

*Opinion filed May 25, 1962.*

J. WILLIAM BRAITHWAITE, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and WILLIAM L. CARLIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

The defendant, Curtis Wells, was indicted on the charge of unlawful sale of narcotic drugs. He pleaded not guilty,

waived a jury, was found guilty and sentenced to the penitentiary for a term of 10 to 12 years. He brings this writ of error to reverse the judgment of the trial court on the sole ground that the evidence establishes a defense of entrapment as a matter of law.

It appears from the record that on November 11, 1958, one Dantzler, a police informant, was searched by three police officers at the Narcotics Bureau of the Chicago Police Department. This search disclosed that Dantzler had no narcotics or money and the three policemen immediately took Dantzler to 63rd and Kenwood Streets in Chicago and gave him a marked $5 bill. Dantzler got out of the car and walked up to the defendant and one Raymond Stanley, and told them that he wanted some narcotics. Dantzler knew Stanley but had not met the defendant before. Defendant testified, and Dantzler denied, that Dantzler told defendant if he would get some narcotics, Dantzler would split them with him. The three of them went to an apartment building at 6239 Kenwood where Dantzler gave the defendant the $5 bill. The defendant then went into an apartment, came out and announced there were no narcotics available and returned the money to Dantzler. They were then about to leave the building when they met one Henry Moore. Moore then went upstairs with defendant, Dantzler and Stanley. Dantzler then returned the $5 bill to defendant who went back into the apartment with Moore, and a few minutes later came out and took Stanley and Dantzler to the fourth floor of the next building. Defendant then handed Dantzler a package or packages containing heroin.

The defendant, Wells, testifying in his own behalf, stated that on November 11, 1958, he was in a night club drinking when he was approached by Stanley who wanted to know if the defendant could get him some narcotics. He testified that he said he could not and then left the club. Stanley followed him and told defendant to wait and he would get some money to buy narcotics. He then testified

that Dantzler came by and told defendant that if he would make a purchase for him, he would split the narcotics with defendant and Stanley. He, the defendant, got $5 from Dantzler and 80¢ from Stanley, purchased two packs from Moore and gave both packs to Dantzler. He then claims that Dantzler gave defendant and Stanley a "taste" for getting the narcotics.

On this record it is undisputed that the defendant received money from Dantzler and took the money and purchased narcotics from Moore and gave them to Dantzler. Dantzler denies splitting the narcotics with defendant but insists that he immediately took the narcotics to the police. The sole question on this appeal is whether the defendant was entrapped into committing the offense.

The defense of entrapment has often been considered by this court, in accordance with the principles recently repeated in *People* v. *McSmith*, 23 Ill.2d 87, where we said: "Entrapment is recognized in this jurisdiction as a valid defense, and has been defined as the 'conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer.' (*Sorrells* v. *United States*, 287 U.S. 435, 454, 77 L. ed. 413, 423.) Stated differently, entrapment is established where it appears that officers of the law or their agents incited, induced, instigated or lured the accused into committing an offense which he otherwise would not have committed and had no intention of committing, and if a criminal design or intent to commit the offense originates in the mind of the one who seeks to entrap the accused, and who lures him into its commission merely for the purpose of arresting and prosecuting him, no conviction may be had. (14 I.L.P., Criminal Law, sec. 50.) At the same time, however, a distinction based upon public order has been drawn between inducing an innocent man to do an unlawful act, and setting a trip by the use of decoys, artifice and deceit to catch one

in the execution of a criminal act of his own conception and design. Thus is it that entrapment is not available as a defense to a person who has the intent and design to commit a criminal offense, and who does commit the essential acts constituting it, merely because an officer of the law, for the purpose of securing evidence, affords such a person the opportunity to commit the criminal act, or purposely aids and encourages him in its perpetration. 14 I.L.P., Criminal Law, sec. 50; see also: *Sorrells* v. *United States,* 287 U.S. 435, 77 L. ed. 413; *People* v. *Outten,* 13 Ill.2d 21; *People* v. *Clark,* 7 Ill.2d 163; *People* v. *Gaugliata,* 362 Ill. 427; 15 Am. Jur., Criminal Law, secs. 335-336; 22 C.J.S., Criminal Law, sec. 45."

Defendant's contention is that the defense of entrapment is available to him because there is no evidence that either the informant or the police had substantial reason to suspect that defendant dealt in narcotics. While we have held that when the defense of entrapment is invoked, prior violations are admissible to show a criminal design, (*People* v. *Outten,* 13 Ill.2d 21,) we know of no case that requires a prior knowledge of the criminal predilection in order to permit the police to afford an opportunity to commit a crime. The crux of the issue is not the reasonableness of the suspicion by the police, but the methods used.

If the police, together with an informant, merely set the stage in order to witness whether or not the Narcotics Act would be violated, the defense of entrapment will not lie. (*People* v. *Shannon,* 15 Ill.2d 494.) The prior innocence of defendant may be relevant in determining if the police did more, and in fact induced him to embark on an illegal venture at their behest. However, we do not think there is a burden upon the People to prove a past record sufficient to create a reasonable suspicion that defendant is guilty of a crime.

Defendant's own words are significant on the issue of entrapment. Testifying on his own behalf he stated: : "this

fellow Dantzler he come up, started talking to Stanley * * * And I walked off up toward Kenwood and was about to turn the corner when Stanley caught up aside me and this fellow came up behind me as we were walking together and Stanley told me his brother was one of the fellows burned him for some money and if he had asked, you know to make a sale, buy, for anything to accept the money in order to burn him to get the money * * * Then Dantzler stated to me, he said if I would make a purchase for him he would split the stuff between me and Stanley. So we walked a little further. He tells me to go and accept the money, you know. So I waited awhile. I thought about it. Then he got kind of suspicious. He didn't want to give me the money. I told him, 'Man, I don't want to take your money if you think I am going to run off with it.' * * * He gave me $5, and I got eighty cents from Stanley and went up the hall, waited awhile. * * * And I was on my way out of the building when Stanley called me back. I asked him what he wanted. He said, 'Hank want to see you.' I come back, I asked him what did he want? And he (Moore) said, 'What is happening?' So I stated to him I wanted to get some stuff. He said he had something."

Defendant then testified that he went with Moore to make the purchase.

The admitted acts of defendant constitute an illegal sale of narcotics. (*People* v. *Shannon*, 15 Ill.2d 494, 496.) We also think the testimony of defendant himself negates the charge of entrapment. From his own chronology the criminal design originated with his friend Stanley, and was made possible by his friend Moore. The sole police agent, Dantzler, did no more than supply the money which enabled defendant to consummate his criminal predeliction.

Defendant's acquiescence, and his ready access to a source of narcotic drugs, together with his evident familiarity with the narcotic traffic, are completely incompatible

with the picture of an otherwise innocent victim succumbing to the importunings of an unscrupulous agent of the police. (*People* v. *McSmith*, 23 Ill.2d 87, 95.) Defendant also claims that his conviction must be reversed because Dantzler promised to share his purchase with defendant. This testimony is categorically denied by Dantzler, and defendant failed to call either Stanley or Moore to corroborate his claim. On such a record it was for the court, as a trier of fact, to determine the credibility of the witnesses and the weight to be afforded their testimony. *People* v. *Franceschini,* 20 Ill.2d 126, 131.

Even if it were assumed that Dantzler offered to share the purchase, defendant's own version of the incident does not represent this promise as a compelling inducement to make the illegal purchase. There is no showing that the police preyed upon the craving of an unfortunate addict, but rather that defendant calmly "thought about it," took the money and made the purchase.

In conclusion, we find that the methods used by the police, as shown by this record, did not constitute entrapment. The judgment of the criminal court of Cook County is accordingly affirmed.

*Judgment affirmed.*