**People of the State of Illinois, Defendant in Error, v. Robert E. Gassaway, Jr., Plaintiff in Error.**

**Gen. No. 50,462.**

First District, Third Division.

December 9, 1965.

Wilbur C. Delp, Jr., of Chicago, for plaintiff in error.

William G. Clark, Attorney General of Springfield (Fred G. Leach and George Kenney, Assistant Attorneys General, of counsel), and Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

The Criminal Court of Cook County, at a bench trial, found the defendant, Robert E. Gassaway, guilty of unlawful possession and sale of narcotics. He was sentenced to a term of imprisonment for not less than fifteen years nor more than life.

On May 18, 1959, the defendant, then 22 years of age and a narcotics addict, was in the office of the United States Commissioner in Chicago, Illinois. At that time he was approached by one Manolo, a special employee of

the Federal Bureau of Narcotics who had assisted the Bureau previously in narcotic cases. Manolo told the defendant that he was "sick," in need of narcotics, and asked the defendant if he could provide him with narcotics. The defendant replied that he was also in bad condition, and that he could not provide Manolo with narcotics because he got what he wanted for himself from other people. Manolo again asked the defendant if he could help him and the defendant replied that maybe he could get some stuff. The defendant then gave his phone number to Manolo and told the special employee to contact him.

The next day the defendant received a telephone call and was asked by the caller if he could obtain narcotics. There was a conflict in the testimony as to who placed this call. The defendant testified that Manolo called him, stated he was quite sick, and asked the defendant to help him. However, Joseph M. Arpaio, a Federal Narcotics Agent, testified that it was he who placed the call, and that he told the defendant that he was a friend of Manolo's and was interested in doing business. This was confirmed by another agent, William J. Olivanti, who testified that he was present when Arpaio, not Manolo, called the defendant.

During the course of this phone conversation the defendant told the caller to proceed to 144th Street and Western Avenue, and upon arrival to call again for further directions. Manolo and Arpaio proceeded as the defendant directed, and when they arrived at the location Arpaio called the defendant by telephone and was instructed to drive to 144th and Harrison Streets. Upon arrival there, the defendant approached and entered the auto, and the three men proceeded to a poolroom in Robbins, Illinois. The defendant testified that Arpaio told him that he was a big time dealer, that Manolo worked for him selling drugs, and that he would start the defendant into business.

The defendant tried to find a man named Tony, who was supposedly selling the narcotics. Arpaio testified that defendant said that he had a partner named Tony in Robbins, and that the defendant could handle the business. The defendant was unable to locate Tony, and the three men drove to a new location and parked the auto. The defendant took $25 from Arpaio and disappeared from view. A few moments later he came back and stated that he had the stuff. The defendant had five bags of heroin, weighing a total of one-thirtieth of an ounce.

Another conflict occurred in the testimony with respect to whether or not Arpaio promised the defendant any payment in return for his services. The defendant claimed that Arpaio promised him one of the bags of heroin, but gave him only part of a bag after Manolo had used a portion of it, while Arpaio said that he did not promise to give the defendant any of the heroin, nor did he give him any, but that the defendant retained one bag and told Arpaio that he was keeping it for his services.

On June 2, 1959, Arpaio again attempted to purchase narcotics through the defendant but was unsuccessful.

Olivanti and Arpaio arrested the defendant on June 16, 1959. At that time the defendant stated that "I'm not a big peddler, I'm just trying to make a little money." The trial and subsequent conviction followed the arrest.

The defendant bases his appeal on three separate grounds. He contends: (1) that upon arrest he was not taken before a judge or magistrate without unnecessary delay, and his subsequent confession was obtained during an illegal detention and therefore its receipt into evidence was a violation of his federal and Illinois constitutional rights; (2) that the evidence shows that the action of the federal agents and their informer induced the defendant to possess and sell narcotics and constituted entrapment as a matter of law; (3) that the sentence imposed

247

by the trial court, fifteen years to life in the penitentiary, was unduly severe, unwarranted, and otherwise erroneous.

We find that the trial court did not err in finding the defendant guilty as charged, and in imposing a sentence of from fifteen years to life.

■ Defendant's first contention on appeal was disposed of by the Supreme Court of Illinois upon transfer of the case to this court. The transfer order stated:

> "It is claimed that we have jurisdiction on the ground that a constitutional question is presented by the admission in evidence of an oral confession. The defendant does not claim that the confession was obtained by threats, promises or violence, but argues that it was inadmissible because it was obtained while he was in custody and before he was taken before a Magistrate. The argument is based upon the federal rule which we have declined to follow (People v. Bush, 29 Ill2d 367). The constitutional issue is no longer fairly debatable. The motion of the defendant in error is allowed and the cause is transferred to the Appellate Court for the First District."

Based upon the Bush case, supra, and the above order, we find that the trial court correctly admitted into evidence a confession by the defendant that he was not a big peddler but merely wanted to make a little money. The trial court interpreted this confession to show that the defendant was not duped into entering an illegal transaction, but rather was engaged in a commercial enterprise.

■ Further, the State points out that no objections were made at the trial to the admission of the statements by the defendant into evidence. It is well settled that if objections are not made at the trial to the admission of evidence, they will not be considered on appeal. (People v. French, 33 Ill2d 146, 149, 210 NE2d 540; People v. Williams, 28 Ill2d 114, 190 NE2d 809; People v. Trefonas, 9 Ill2d 92, 98, 136 NE2d 817.)

248

 Defendant must also fail in his second contention that the actions of the informer and the federal agent constituted entrapment as a matter of law. Entrapment has often been considered by Illinois courts as a valid defense and has been defined as the "conception and planning of an offense by an officer, and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer." (Sorrells v. United States, 287 US 435; People v. McSmith, 23 Ill2d 87, 178 NE2d 641.) However, a distinction must be drawn between inducing an innocent man to do an unlawful act, and by the use of decoys and deceit to catch one in the execution of a criminal act of his own conception and design. This defense is not available to one who has the intent and design to commit a criminal offense, and who does commit the essential acts constituting it, merely because an officer of the law, for the purpose of securing evidence, affords such a person the opportunity to commit the criminal act, or purposely aids and encourages him in its perpetration. (Sorrells v. United States, supra; People v. Wells, 25 Ill2d 146, 182 NE2d 689; People v. Outten, 13 Ill2d 21, 147 NE2d 284; People v. Lewis, 26 Ill2d 542, 187 NE2d 700.)

The defendant relies upon Sherman v. United States, 356 US 369, in which case the accused obtained narcotics for a government informer who appeared in need of them. The Supreme Court reversed a conviction, based upon the defense of entrapment. That case is easily distinguishable from the case at bar, however, because the facts there revealed a series of requests by the informer to the defendant for narcotics. From August until November of 1951 Sherman was approached by the informer on numerous occasions, and the informer repeatedly told the defendant he was suffering and needed drugs.

Unlike the Sherman case, supra, in the instant case Manolo asked the defendant only twice to obtain narcotics for him, all within the span of a few seconds of conversation. The defendant did not appear reluctant to aid Manolo, but immediately offered his phone number and told Manolo to call him. The record in this case shows no persistent requests supported by tales of suffering or appeals to sympathy, as was present in the Sherman case, supra.

The first phone call to the defendant was made by either Manolo or Arpaio. The defendant testified that Manolo made the call and told him again that he was sick and needed narcotics. However, Arpaio testified that it was he who placed the first call to the defendant. This was confirmed by agent Olivanti who stated that he was present when the call was placed. The ready offering by the defendant of his phone number to Manolo on their very first meeting also dispels the notion that he was induced to make the sale because of the repeated entreaties and suffering of Manolo. Relevant to this point is the admission by the defendant that he was a small peddler and wanted to make some money, which weighs against defendant's claim that it was sympathy for Manolo in his suffering which caused him to make the purchase.

Further, the evidence shows that once the defendant met Arpaio it was with him that the defendant dealt. Arpaio gave defendant the money. Manolo did not do the talking, nor were the narcotics turned over to him. The defendant gave the narcotics to Arpaio. Arpaio made no claim that he was sick. The defendant's own testimony was that Arpaio represented himself as a big narcotics peddler from the north side. This is a greatly different factual situation than existed in the Sherman case, supra.

Another case which the defendant relies upon to show that he was entrapped is People v. Strong, 21 Ill2d 320,

172 NE2d 765, where the court found the defense of entrapment available in a narcotics case. This case is also distinguishable from the instant case since the defendant there had been supplied with narcotics by an agent of the government. The court held this was a significant fact in determining entrapment.

█ The defendant places great emphasis upon the fact that he was induced to make the purchase of narcotics by a promise of Arpaio that he would give the defendant a portion of the drugs. The court in People v. Wells, supra, implied that the defense of entrapment would be available if a promise by the purchaser to share the narcotics with the defendant were a compelling inducement to the commission of the illegal act. In the instant case, we do not have any evidence of an inducement to commit a crime by the promise of narcotics. The only evidence of a promise by Arpaio to give the defendant narcotics is the testimony of the defendant himself. This is countered by the testimony of Arpaio who said that he never promised the defendant any narcotics, but rather the defendant kept some for himself. The trial court chose to believe Arpaio in that phase of the transaction, and this will not be disturbed on appeal. The court had a full opportunity to determine the credibility of witnesses and chose to believe one over the other. (People v. Clark, 25 Ill2d 331, 332, 185 NE2d 191; People v. Hoskins, 25 Ill2d 333, 336, 185 NE2d 214; People v. Hatch, 49 Ill App2d 177, 187, 199 NE2d 81.)

We must again point out that the defendant, upon arrest, told the agents that he was a small peddler and that he only wanted to make a little money. This statement is quite inconsistent with his contention that he was promised a portion of the narcotics by Arpaio in return for making the purchase.

The defendant contends that the lack of a prior record or any testimony tending to show that he had previously

251

committed the offense charged is a significant factor in establishing the defense of entrapment. The case of People v. Wells, supra, sufficiently disposes of this contention of the defendant, when the court states at page 149: "The prior innocence of defendant may be relevant in determining if the police did more, and in fact induced him to embark on the illegal venture at their behest. However, we do not think there is a burden upon the People to prove a past record sufficient to create a reasonable suspicion that defendant is guilty of a crime." The court added that it knew of no case that required a prior knowledge of the criminal predilection in order to permit police to afford an opportunity to commit a crime.

 Defendant's last contention on appeal is that the sentence of the trial court was unduly severe, unwarranted, and otherwise erroneous. The sentence imposed, fifteen years to life in the Illinois State Penitentiary, is within the limits prescribed by statute. (Ill Rev Stats 1959, c 38, §§ 192.28–38.) The defendant cites many cases to show that the sentence is severe when compared with sentences imposed on defendants in similar cases reviewed by this court in recent years. However, the sentence imposed upon the defendant was a matter of discretion with the trial court, and in the absence of unusual circumstances, this court will not interfere.

The case of People v. Valentine, 60 Ill App2d 339, 355, 208 NE2d 595, is quite relevant to this contention of the defendant. There the court said: "We believe that the power to reduce sentences should be used with caution and that a sentence imposed by the trial judge, who sees the defendant and is in a far better position to appraise him and to evaluate the likelihood of his rehabilitation than a reviewing court, should not be reduced unless there are substantial reasons for doing so. The penalty decided upon by the trial court, if within the statutory limits, should not be changed merely because of judicial clemency or just because the reviewing

252

court would have imposed a different one if it had been in the trial court's position."

The judgment of the Criminal Court of Cook County is affirmed.

Affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.