**People of the State of Illinois, Plaintiff-Appellee, v. Herman Mitchell, Defendant-Appellant.**

**Gen. No. 51,765.**

First District, Third Division.

October 24, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

Defendant appeals from a conviction for the crimes of robbery and aggravated battery. The trial was by jury and the court imposed a sentence of not less than 10 nor more than 20 years for the crime of robbery, and a concurrent sentence of 5 to 10 years for the crime of aggravated battery.

The defendant contends that his conviction rests on evidence which patently discloses reasonable doubt as to his guilt of the crimes with which he was charged; that defendant's sentence of 10 to 20 years was excessive and should be reduced by this court, and that the sentence of 5 to 10 years for aggravated battery should be set aside because both the robbery and aggravated battery charges arose out of the same occurrence.

The evidence showed the following: On August 28, 1965, Mr. Pedar Johnson received three visitors from out of town. On that evening the foursome went to a lounge in Chicago where they drank some beer and then left to return to Mr. Johnson's home. They went to a bus stop at the corner of Blackhawk and Larrabee. After standing on that corner for a few minutes the four were approached by a young man who asked for bus fare. One of the men in the Johnson group gave the youth some change but when the youth asked for return bus fare he was refused and he departed. After a short time, as a bus was approaching, Johnson and his companions found themselves surrounded by a group of young men, one of

whom was the person who had asked for money. Johnson started to turn to his left and as he did so he was struck squarely on the chin by an individual identified as Herman Mitchell, the defendant. John Webster, one of Johnson's associates, was picked up bodily from behind and carried around the corner and held down while they took his wallet and watch. He struggled a little and then saw someone holding a knife and thereafter he did not move. After Johnson had been knocked to the pavement he was bewildered and stunned. Several seconds later Johnson got up, was hit again and knocked to the pavement. He then attempted to get up a second time, was hit and lost consciousness. Herman Mitchell, the defendant, was identified by Johnson as the man who had struck him. Johnson was taken to the Cook County Hospital. Approximately $10 which he had on his person was taken. Mr. Johnson's testimony was that he had a total of three beers during that evening. Johnson sustained a basal skull fracture and a fractured eardrum.

Peter Warren, who was one of the Johnson group, testified that when the youths surrounded the Johnson group that in addition to the one who had first asked them for the bus fare there were five or six other youths surrounding them. Warren's watch was stolen by the youth who obtained the bus fare. He was not sure whether that youth was the one who took his wallet.

Isaac Davis, a witness called by the State, testified that he saw the defendant, Mitchell, whom he had known for about a year, hit Johnson and that Johnson fell from the blow.

Eloise Hunt, another State witness, testified that she lived at 1486 North Larrabee and that at about 11:30 p. m. on August 28, 1965, she looked out the window and saw Herman Mitchell, the defendant, beating, stomping and kicking the man. She was looking from her window which was directly across the street from the corner on which the incident took place. On cross-examination it was

brought out that the witness' mother had been charged with the crime of murder and she knew that Herman Mitchell's mother was going to testify at the trial of the witness' mother. When asked if her mother was upset at that she said, "No, she wasn't because after they got out they got drinks and things together and they never did discuss it much.".

Robert Sherman, a patrolman of the Chicago Police Department, went to the corner of Blackhawk and Larrabee in response to a call and found several persons and "a victim lying on the ground; unconscious." He rushed the victim, Pedar Johnson, to the hospital.

Two other police officers testified to making the arrest of the defendant in his home at 3:00 a. m. on August 29, 1965.

The defendant testified that he was home playing records on the evening of August 28, 1965, and that his friend, Eunice Smith, came to his house. At about 9:00 p. m. he walked Eunice home and she informed him she was pregnant with his child and asked if Mitchell intended to marry her. Mitchell answered that he did not know and that Eunice Smith stated that if he "didn't marry her and help take care of the kid that she was going to have me (Mitchell) put away in jail." Mitchell further testified that he left Eunice Smith's home shortly after 9:00 p. m., and when he arrived at his home he ate a sandwich. He intended to go out but his stomach hurt and he went to sleep. The next thing he knew he was arrested by the police for robbery.

Officer Frank S. Blasch testified that when the police awakened Mitchell and questioned him as to his whereabouts on the evening of August 28, 1965, Mitchell said that he had taken his girl friend to the movies. Blasch also testified that the witnesses to the occurrence had been located by a house to house canvass of the neighborhood and that Isaac Davis, one of the State's witnesses,

384

lived approximately five blocks away from the intersection of Blackhawk and Larrabee.

Bertha Hunt, an additional witness for the State, testified that she lived at 1486 North Larrabee, on the evening of the occurrence. She had known the defendant for about ten years. She lived on the third floor and her daughter called her to the window. She saw a cluster of people below, and also saw Herman Mitchell beating a white man. Mitchell was standing over the white man, kicking him, and then another man pulled him across the street. She was asked whether she knew the defendant's mother. When she was asked how she and the defendant's mother got along she said, "We got along fine," but she did not get along with the defendant's mother now because she came by and threatened the witness' daughter because she came here to court. The witness further testified that she had been charged with murder and that Mrs. Mitchell testified against her, but that she was not angry with Mrs. Mitchell nor did she threaten Mrs. Mitchell or her son. The witness was found not guilty of the murder.

 The first contention of the defendant is that the State failed to prove beyond a reasonable doubt the guilt of the defendant of the crimes with which he was charged. The defendant argues that of nine witnesses who testified for the State four did not identify the defendant. It is the defendant's contention that, while five of the State's witnesses identified the defendant as the man who beat Pedar Johnson, the evidence of these witnesses should be given close scrutiny before being accepted as proof beyond a reasonable doubt that the defendant was in fact the man involved in the altercation with Johnson. The defendant contends that Pedar Johnson was standing on a corner illuminated only by streetlights; that he and his party were surrounded by the group; that he turned his head and was struck in the jaw and knocked to the pavement; that after several blows he was rendered

unconscious. The defendant argues that the whole episode lasted three to five seconds, and that it is very doubtful that a man who was being physically attacked could in that short period have the opportunity to study the face of his attacker so as to identify him later. There were four other witnesses who identified Mitchell positively, and the defendant argues that their testimony should be suspect. Each of the witnesses was subjected to cross-examination by defense counsel. The jury, sitting as trier of facts, was confronted with a clear conflict in the evidence which it was their function to decide. People v. Robinson, 30 Ill2d 437, 197 NE2d 45. The sufficiency of the identification of the defendant is always a question for the jury and will not lightly be set aside on appeal. People v. Clark, 28 Ill2d 423, 192 NE2d 851. We do not believe that the identification of the defendant was in any way unsatisfactory, nor can we say that the testimony of the State's witnesses was not so positive as to identification as to warrant the setting aside of the jury's verdict. The evidence as a whole was amply sufficient to support the conviction of the defendant on both charges beyond any reasonable doubt.

The defendant secondly contends that his sentence of 10 to 20 years for robbery was excessive and should be reduced.

The defendant cites the case of People v. Lillie, 79 Ill App2d 174, 223 NE2d 716, where the court said on page 179:

> "The hope of earlier release is a great incentive to a prisoner to participate in the educational and rehabilitation programs provided in modern penal institutions. Excessive minimum sentences, imposed by the courts, may defeat the effectiveness of the parole system by making mandatory the incarceration of a prisoner long after effective rehabilitation has been accomplished."

■ ■ A hearing in aggravation and mitigation was conducted by the court before sentence was pronounced upon the defendant. The court was aware that Mitchell was 19 years of age; that he had been sentenced in 1962 to 30 days for robbery, to four months in 1964 for a battery committed by him, and in 1965 to the House of Correction for burglary. The court properly considered that the victim sustained a fractured skull and a broken eardrum which resulted from a vicious and senseless beating and kicking of Pedar Johnson. Indeed, the victim might have been more seriously injured had not someone arrived and pulled Mitchell away from him. We believe from the evidence in this case that the defendant demonstrated an uncontrolled viciousness, and that, together with his prior record, warranted the imposition of the penalties imposed by the trial judge. In People v. Valentine, 60 Ill App2d 339, 355–356, 208 NE2d 595, we said:

> "We believe that the power to reduce sentences should be used with caution and that a sentence imposed by the trial judge, who sees the defendant and is in a far better position to appraise him and to evaluate the likelihood of his rehabilitation than a reviewing court, should not be reduced unless there are substantial reasons for doing so. The penalty decided upon by the trial court, if within statutory limits, should not be changed merely because of judicial clemency or just because the reviewing court would have imposed a different one if it had been in the trial court's position."

In People v. Gassaway, 65 Ill App2d 244, 252, 212 NE2d 689, we said:

> "However, the sentence imposed upon the defendant was a matter of discretion with the trial court, and

387

in the absence of unusual circumstances, this court will not interfere."

See also People v. Hobbs, 56 Ill App2d 93, 205 NE2d 503.

This defendant, upon his past record and the evidence adduced at the trial of this case, is deserving of no leniency.

The last contention of the defendant is that the concurrent sentence of 5 to 10 years imposed upon the defendant for aggravated battery should be vacated because the aggravated battery charge and the robbery charge grew out of the same conduct or occurrence.

In People v. Duszkewycz, 27 Ill2d 257, 189 NE2d 299, the defendant was charged with the crimes of forcible rape and incest. In that case the court said that the question raised was whether two separate punishments can be imposed for a single act. The defendant was charged with rape and with incest for having had unlawful carnal knowledge with his ten-year-old daughter. On page 259 the court said:

> "Force and lack of consent are essential elements of the charge of rape upon which the defendant was convicted, (People v. Jeanor, 23 Ill2d 347,) but not of incest. (David v. People, 204 Ill 479.) The relationship between the parties is an essential element of incest, (People v. Laughery, 396 Ill 213,) but not of rape. The common denominator is the element of unlawful carnal knowledge."

The court continuing on page 261 said the following, after discussing the cases of People v. Stingley, 414 Ill 398, 111 NE2d 548, and People v. Schlenger, 13 Ill2d 63, 147 NE2d 316:

> "While neither the Stingley nor the Schlenger case is precisely in point, the views there expressed indicate the basis of decision in the present case. The Stingley case makes it clear that two punishments

388

can not be imposed for a single act, even though different ingredients are involved in the two crimes. In that case, however, the two sentences were identical, and it was not necessary to decide which should be set aside. It was sufficient to hold, as the court held, that 'the satisfaction of one will satisfy both.' (414 Ill at 405.) In the Schlenger case, where different sentences were imposed to run concurrently, the court affirmed the judgment for the greater offense and set aside the other.

"In the present case we are of the opinion that only one sentence should have been imposed, and that sentence should have been for the greater offense."

In People v. Weaver, 93 Ill App2d 311, 316, 236 NE2d 362, the court said:

"Section 2–4 of the Criminal Code defines conduct as 'an act or a series of acts, and the accompanying mental state.' The Committee Comment states that the word 'conduct' is used in the sense of 'the same transaction' as discussed in People v. Schlenger, 13 Ill2d 63, 147 NE2d 316 (1958)."

The question here involved is primarily whether the offenses charged against the defendant, namely, aggravated battery and robbery, arose from the same conduct. Section 1–7 (m) of the Criminal Code of 1961 permits the imposition of consecutive or concurrent sentences when a person shall have been convicted of two or more offenses which did not result from the same conduct.

In People v. Ritchie, 66 Ill App2d 302, 213 NE2d 651, the court concluded that since rape and burglary are each designated as a forcible felony the conviction for rape is the greater offense. The sentencing for rape was affirmed but reversed as to the burglary charge. Thereafter the defendant was granted leave to appeal and the State sought to file a petition to cross-appeal from the

judgment of the Appellate Court reversing defendant's conviction for burglary with intent to commit rape. The Supreme Court in that case (People v. Ritchie, 36 Ill2d 392, 397, 222 NE2d 479) said, in commenting on the Appellate Court's opinion, the following:

> "The sense of the opinion appears to be that since the two crimes charged, i. e., rape and burglary with intent to commit rape, arose out of the same conduct or transaction and against the same person it would be unfair and prejudicial to defendant to impose two sentences and therefore it reversed the burglary conviction, . . . .

> "The State convincingly argues that the principle set forth in the cited cases is not applicable; that the crimes there charged arose out of a single act, for instance, rape and incest involving the same person, and armed robbery and grand larceny involving the same money, whereas here there are two separate and distinct acts giving rise to separate and distinct substantive offenses."

The Supreme Court then proceeded to say that the question was not properly before them on review because the State had no right to appeal, as the State has, under the law and rules of the Supreme Court, only the right to appeal from the order of the Appellate Court if the substantive effect of its judgment results in dismissing an indictment, information or complaint.

In the later case of People v. Raby, 40 Ill2d 392, 240 NE2d 595 (1968), the Supreme Court stated that the Appellate Court's holding in People v. Ritchie, supra, is "questionable." It was, no doubt, the feeling of the Supreme Court that in the Ritchie case the sentences for rape and burglary with intent to commit rape should both have been upheld, on the theory that rape and burglary

with intent to commit rape did not arise out of the same conduct or transaction.

■ ■ While force or threat of force is a necessary element of robbery, plus the taking of property or money, and force, of course, is required in proof of aggravated battery, the two offenses did not necessarily grow from the same conduct.

■ Johnson, the complaining witness in this case, testified that he was knocked down three times by the defendant, and other evidence showed that the defendant did not discontinue his vicious attack until he was pulled away by someone else. The offense of aggravated battery does not include the taking of money. Proof of robbery requires, as an element, proof of the taking of money or property. The two offenses here involved did not arise out of the same conduct or transaction.

We therefore conclude that the conviction and sentencing of the defendant for robbery and for aggravated battery should be affirmed.

Judgments affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.