THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MICHAEL ANDREANO, Defendant-Appellant.

Fifth District    No. 77-276

Opinion filed October 4, 1978.—Rehearing denied November 3, 1978.

Brady, Donovan & Hatch, of Belleville (Michael B. Constance and Edward J. Szewczyk, of counsel), for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Bruce D. Irish, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant was found guilty by a Madison County jury of the crime of unlawful delivery of less than 30 grams of a substance containing heroin and sentenced to a term of two to six years in the penitentiary. Defendant appeals from the conviction and from the sentence imposed presenting as issues for review whether the evidence adduced at trial established the defense of entrapment as a matter of law and whether the trial court abused its discretion in imposing a prison sentence of two to six years.

This case arose from the transfer of 10 capsules, containing a total of 1.9 grams of heroin, from the defendant to agent Dennis Higgins of the Illinois Bureau of Investigation. The transfer was arranged by a female IBI informant named Terry Butler.

The defendant admitted at trial that the subject transfer had taken place, the sole issue raised being whether the affirmative defense of entrapment was available to the defendant. Therefore the following facts are summarized from testimony at trial which was entirely unrebutted. Terry Butler called the defendant on the afternoon of August 24, 1976, and arranged to meet him later that evening at My Old School Tavern in Collinsville. Higgins and Butler met the defendant and the defendant's girlfriend Barbara Marchiando in the tavern at about 8:30 that night. The four of them shared one table and conversed.

During this conversation, defendant said that he was going to call "his connection" to make sure he was home. While defendant was calling, Marchiando asked Higgins and Butler how much heroin they wanted to buy. Higgins replied that they wanted about 10 capsules. Higgins agreed to pay $100 for the heroin and give the defendant and Marchiando another

$20. Defendant then returned to the table and said that he had spoken to his connection and could obtain heroin. All four people then left the tavern, and Higgins gave Marchiando $120 while outside. Defendant told Higgins that he would return in about 1½ hours; defendant then left with Marchiando in defendant's car. Higgins and Butler reentered the tavern and waited.

Defendant and Marchiando rejoined Higgins and Butler in the tavern about 10:15 p.m. Defendant said that he and Marchiando were on a methadone program and were trying to "cut down on their habit." Soon after receiving the heroin, Higgins and Butler left the tavern.

Agent Higgins had been introduced to Butler in June 1976. They worked together on about 15 drug cases between June and August 24, 1976. Her salary depended upon the quantity and quality of drugs involved, and she was not paid when no drugs were seized. She received $40 or $50 in defendant's case. She was acquainted with people who dealt in drugs in the Collinsville area, and before going to the tavern August 24, 1976, she had informed Higgins that defendant would probably purchase heroin in St. Louis.

About 10 days before August 24, 1976, Butler and her husband had seen defendant, with whom they were acquainted, leaving a methadone clinic on Olive Street in St. Louis, Missouri. Defendant was leaving the clinic that afternoon after receiving his medicine when he heard someone shout his name. He saw a man and a woman sitting in an orange Volkswagen across the street and walked over to greet them. Defendant recognized the Volkswagen and then remembered that its occupants were Dennis and Terry Butler. Defendant informed the Butlers that he was attending a detoxification program there.

Butler and her husband were also acquainted with the Sharells of St. Louis, and knew that many people in the Collinsville area purchased drugs from the Sharells. Butler occasionally babysat the Sharells' children. As of the trial Butler had earned "$200 or $300" as an informant.

Three I.B.I. agents followed defendant from the tavern to St. Louis, looking for his source. They lost defendant in St. Louis, and returned to the tavern.

Defendant was 24 years old at the time of trial. In the summer of 1976 he was employed by his father's company as a sales representative and traveled extensively in a five-state area. He had used heroin in 1975, but had not become heavily addicted until the summer of 1976. Sharell was his only heroin source. Defendant's parents did not know that he was addicted to heroin, and he did not tell them he was attending the methadone clinic. He asked the clinic to keep his record confidential because he was working for his father and was ashamed of his involvement with the drug. While defendant was on the methadone

program he continued to use heroin occasionally on business trips when he could not work without it.

The above facts summarize the unrebutted testimony heard at the trial. The disputed and conflicting testimony is summarized as follows. There was substantial difference in the accounts given by witnesses at trial concerning how many times Butler called the defendant before defendant agreed to procure heroin for her. Butler testified that only one telephone call was made to defendant's residence prior to the call on August 24, 1976. That call was made a few days before August 24; a man answered and told her that the defendant was not home. The first witness for the defendant, his brother Kip Andreano, was home the weekend before August 25, 1976. He stated that during the weekend he answered a telephone call from a woman who did not identify herself, but said that she was feeling bad, needed a fix, and asked what Kip could do for her. Kip replied that he could not help the woman and told her not to call again.

The defendant's mother, Betty Andreano, testified that in the summer of 1976, just before Kip left home to return to school on August 25, she received a series of telephone calls from a woman who did not identify herself and who asked to speak with the defendant. Mrs. Andreano stated that it was unusual for a woman to be calling her son, as he had been dating Barbara Marchiando exclusively for two years.

Defendant testified that after his meeting with the Butlers outside the methadone clinic, Terry Butler called him at his home five or six times within a range of three to five days. Each time she called, Butler asked defendant to buy heroin for her. He stated that he refused to help her several times during these calls before he ultimately complied on August 24, and that he helped her then because he was fearful that his family might discover his addiction. Defendant also was advised by his brother Kip that a woman had called for the defendant and had asked Kip to buy drugs for her.

Testimony in the trial court also differed as to statements made by the defendant to agent Higgins outside the tavern just prior to defendant's trip to St. Louis. Higgins testified that as they walked toward defendant's car, he asked defendant whether there was any possibility that the deal was a "rip-off" and that defendant assured him that he had purchased heroin from his connection many times. Defendant admitted telling Higgins that the chances of being "ripped-off" were slim, but did not recall telling him that he had purchased heroin many times. Defendant elaborated that it was very unlikely that he would have trusted Higgins enough to have made such a statement to him.

Testimony by Higgins and the defendant also differed as to defendant's statements made in the tavern at about the time the defendant handed the

subject heroin to Higgins. Higgins stated that the defendant said he usually went to St. Louis for other people and when he did he usually purchased five capsules of heroin, three for himself and two for Marchiando, and that they were trying to cut down on their habits. Defendant did not recall making the statements about the five capsules; when asked if he "could" have made those statements, he replied affirmatively.

The final point of contention as to the facts concerns statements Butler may have made in an effort to pursuade defendant prior to his acquiescence on August 24. Butler testified that she had not told defendant that she was "really in need" of some heroin, that she "really needed a fix," or that she or her husband was having a bad reaction at the methadone clinic. Defendant testified that Butler had told him that she wanted something because she was feeling poorly due to the methadone treatment he thought she was receiving. He said that she told him she was addicted and sick.

Based on the evidence summarized above, the jury found the defendant guilty of unlawful delivery of less than 30 grams of a controlled substance.

At the sentence hearing the State presented no evidence in aggravation. Defendant presented the testimony of his mother who stated that defendant would work for his father in Florida if possible. The presentence report submitted to the court by defendant's probation officer recommended that defendant be placed on probation, with six months in Madison County jail, drug treatment, and full-time employment. The report also indicated defendant had undergone treatment by a psychologist for drug addiction since the conviction. The report included a "History of Delinquency and/or Criminality" which listed four charges in addition to the present offense. One of these, an "Investigation of Armed Robbery," was marked "Dismissed." The second and third, "Illegal Trans of Alcohol" and "Unl. Use of Weapon," were dated March 16, 1977, the date on which the jury found defendant guilty of the instant offense. Both were marked "Pending." The fourth, "Unlawful De. of a Controlled Substance," was dated March 31, 1977, and marked "Pending."

During the sentencing hearing, the trial court referred to the two pending charges which were filed the day after the jury's guilty verdict. The State also commented that in imposing sentence, the court should consider the fact that defendant had been charged with dealing in heroin in February 1977, and that he "remained in a very substantial way a trafficker in the drug heroin in Collinsville." The court denied probation and imposed a prison sentence of two or six years.

Although defendant and Barbara Marchiando were jointly indicted for

the instant offense, the trial court granted Marchiando's motion for a severance on January 31, 1977. On February 10, she pleaded guilty to the lesser offense of unlawful possession of less than 30 grams of a controlled substance and applied for probation. On May 11, 1977, one day after defendant was sentenced, Marchiando received a sentence of two years probation with the last six months to be served in the Madison County jail.

Defendant's first contention is that the evidence shows defendant was entrapped as a matter of law.

The affirmative defense of entrapment is defined by section 7—12 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 7—12) which provides:

> "A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such person has originated."

In *People v. Dollen*, 53 Ill. 2d 280, 283-84, 290 N.E.2d 879, the supreme court discussed the defense of entrapment in these terms:

> "Entrapment is a valid affirmative defense if established by the evidence. (*People v. Lewis*, 26 Ill. 2d 542, 545; *People v. Outten*, 13 Ill. 2d 21, 24.) '[W]here it appears that officers of the law or their agents have conceived and planned a criminal offense and have incited, induced, instigated or lured the accused into committing an offense which he would not otherwise have committed and had no intention of committing, entrapment is established and no conviction may be had. [Citations.] On the other hand, entrapment is not available as a defense to one who has the intent to commit the crime and does so merely because an officer of the law, for the purpose of securing evidence, affords such person the opportunity to commit a criminal act, or purposely aids and encourages him in its perpetration.' *People v. Hall*, 25 Ill. 2d 297, 300, *cert. denied*, 374 U.S. 849, 10 L. Ed. 2d 1069, 83 S. Ct. 1912; * * *."

██ If some evidence on the issue of entrapment is raised, the State must prove, beyond a reasonable doubt, that the defendant was not entrapped, together with all other elements of the offense. Ill. Rev. Stat. 1977, ch. 38, par. 3—2(b); *People v. Dollen*; *People v. Cross*, No. 77-179, Fifth Dist., filed July 28, 1978; *People v. Villanueva*, 46 Ill. App. 3d 826, 361 N.E.2d 357.

The question of whether entrapment exists is ordinarily reserved for the jury and should not be disturbed on appeal unless the reviewing court

concludes that entrapment exists as a matter of law. *People v. Spahr,* 56 Ill. App. 3d 434, 371 N.E.2d 1261; *People v. Villanueva; People v. Cooper,* 17 Ill. App. 3d 934, 308 N.E.2d 815.

■■ ■ To establish the affirmative defense of entrapment the evidence must disclose improper inducement on the part of the government, and a lack of predisposition to commit the crime on the part of the defendant. (*People v. Dollen; People v. Cross; People v. Gulley,* 36 Ill. App. 3d 577, 344 N.E.2d 567; *People v. Cooper.*) The type and degree of the informer's conduct, alone, is not the sole determinative factor. (*United States v. Russell,* 411 U.S. 423, 36 L. Ed. 2d 366, 93 S. Ct. 1637; *People v. Cooper*); inquiry into defendant's conduct and predisposition is necessary (*Sherman v. United States,* 356 U.S. 369, 2 L. Ed. 2d 848, 78 S. Ct. 819; *People v. Dollen; People v. Cooper*). The fact that defendant has no prior criminal record is a factor to be considered on the entrapment issue, but the fact of no prior conviction is not sufficient standing alone to show that the defendant was entrapped (*People v. Cooper; People v. Gassaway,* 65 Ill. App. 2d 244, 212 N.E.2d 689).

■■ A review of the evidence in this case leads to the conclusion that the defendant was not entrapped as a matter of law. Defendant admits the sale, as he must do even to raise the entrapment defense. The agents for the State in this case did no more than furnish the defendant an opportunity to commit the offense. The fact that agent Butler made the initial contact for a purchase is not controlling; it is but a factor for consideration by the jury. *People v. Villanueva; People v. Cooper.*

The evidence pertaining to predisposition to commit the offense is overwhelming. Defendant was an admitted user of heroin, even while a participant in a methadone program. He admitted to having bought heroin for his girlfriend Marchiando as well as for others in the area. He displayed a broad knowledge of the drug business and its adherents in the St. Louis area.

Although defendant testified that he was, in effect, relentlessly pursued by agent Butler with pleas of her sickness and need, this testimony was sharply contradicted by Butler who testified that only one telephone call was necessary to set up the sale. The record discloses no reluctance upon the part of the defendant to make the illegal sale. The indication is, as we have noted, to the contrary. In any event, the disputed questions of fact have been resolved against defendant by the jury verdict and we find no justification for setting it aside.

Defendant's next and final argument is that the court abused its discretion in imposing a sentence of two to six years.

The length of sentence to be imposed upon a convicted defendant in a given case is a matter that lies within the sound discretion of the trial court, and absent an abuse of that discretion, a sentence imposed will not

be disturbed on review. (*People v. Perruquet*, 68 Ill. 2d 149, 368 N.E.2d 882.) In arriving at a sentence, the trial court must strike a balance between protecting the interests of society and allowing for the possibility of the rehabilitation of the offender. A reasoned decision may depend upon many factors including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. (*People v. Perruquet*; *People v. Dukett*, 56 Ill. 2d 432, 308 N.E.2d 590.) Great deference and weight is given to that decision on review based on the recognition that the trial court is in better position to determine a sentence than that which a cold record affords a reviewing court. (*People v. Butler*, 64 Ill. 2d 485, 356 N.E.2d 330.) Under the rationale of *Perruquet*, our function is not to serve as a sentencing court but only to determine whether the trial court abused its discretion when imposing the sentence. It is of no import whether or not this court would have imposed different sentences had that function been delegated to us.

The defendant raises three separate arguments: First, that the nature of the offense and defendant's history and character did not justify the imposition of a sentence greater than the statutory minimum; second, that co-defendant Marchiando received more lenient treatment; third, that the trial court considered pending charges in imposing sentence.

Defendant did not testify at the sentence hearing. The presentence report prepared by the probation department was presented in evidence and it indicated that there were three additional charges pending against defendant, at least two of which were lodged following the verdict of the jury in this case.

The trial court noted the pendency of these charges at the sentence hearing and defendant urges this fact as indicative that the pending charges, alone, served as the court's justification for imposing a more severe sentence.

■■■ While it is error for a trial court to consider arrests and charges not followed by convictions (*People v. Greer*, 45 Ill. App. 3d 682, 359 N.E.2d 903; *People v. Kelly*, 36 Ill. App. 3d 476, 344 N.E.2d 50), it is proper to consider such arrests and charges when a convicted defendant has made an application for probation (*People v. Kelly*; *People v. Taylor*, 13 Ill. App. 3d 974, 301 N.E.2d 319; *People v. Moore*, 133 Ill. App. 2d 827, 272 N.E.2d 270). Mere reference to a pending charge does not, of itself, show the judge's reliance thereon in imposing sentence. (*People v. Glover*, 27 Ill. App. 3d 827, 327 N.E.2d 310.) The presumption is, moreover, that the trial court considered only proper factors in imposing the sentence. *People v. Handley*, 51 Ill. App. 3d 68, 366 N.E.2d 405; *People v. Kelly*; *People v. Glover*.

■■ The subsequent charges lodged against defendant cannot be considered by the court in imposing a sentence since they are not, without

convictions, a part of his prior record. Nevertheless, such charges, as well as previously pending charges, may be considered by the court insofar as they may reflect upon the history and character of the defendant (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(c)), as well as upon his fitness for a sentence of probation (Ill. Rev. Stat. 1977, ch. 38, par. 1005—6—1).

■■ As to defendant's contention that his sentence exceeded that given to Marchiando it is to be noted that the court was in no way aware of that since Marchiando was not sentenced until the day following defendant's sentence. Moreover, defendant himself testified that Marchiando was only incidentally connected with the offense in question. And aside from that it is easily apparent from the record that defendant alone was the prime mover in the offense. His was the knowledge, his was the will, his was the action that consummated the offense and it was he who received the proceeds of the sale. Thus, the difference in the complicity of defendant and Marchiando is great and the defendant cannot complain of the disparity of sentence. *People v. Morris*, 43 Ill. 2d 124, 251 N.E.2d 202; *People v. Slicker*, 42 Ill. 2d 307, 247 N.E.2d 407; *People v. Gnatz*, 8 Ill. App. 3d 396, 290 N.E.2d 392.

.For the foregoing reasons we cannot say that the trial court committed an abuse of discretion in imposing the sentence upon defendant.

Affirmed.

KARNS, J., concurs.

G. J. MORAN, J., dissents.