THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
FREDERICK ALAN RENDFELD, Defendant-Appellant.

Fourth District   No. 4—86—0118

Opinion filed October 9, 1986.

96

Gary F. Geisler, of Geisler, Waks & Geisler Law Offices, of Decatur, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Michael Blazicek, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

The major question involved in this appeal is whether the defendant, Frederick Alan Rendfeld, had a right to information concerning whether Bill McCoy, who was shown to have been an accomplice, had assisted law-enforcement officers in securing a search warrant by which evidence constituting the heart of the State's case was obtained. We hold that the informer's privilege was operative and permitted the State to withhold the information sought.

The case commenced on March 8, 1985, when defendant was charged in the circuit court of Macon County with the offense of unlawful possession of cannabis of a weight in excess of 500 grams (Ill. Rev. Stat. 1985, ch. 56½A, par. 704(e)). Subsequently, the defendant was tried by jury and a judgment of conviction was entered on January 28, 1986. The court sentenced defendant to two years' imprisonment and fined him $500. On appeal, defendant asserts that the circuit court erred because: (1) as indicated, the court refused to require the State to inform the defense as to whether Bill McCoy, who had firsthand knowledge of the offense, had assisted the State in obtaining its search warrant; (2) the court refused to allow defendant to show the circumstances surrounding the arrest of McCoy; and (3) the court admitted contraband into evidence over defendant's objection that a proper chain of custody of the evidence had not been established. We affirm.

Decatur police officers Jerry Wagoner and Curtis Johnson and State police agent David McLearin testified at trial for the State describing their arrest of defendant after executing a search warrant on November 6, 1985, at approximately 5 p.m. According to their testimony the following occurred. An automobile driven by defendant was stopped on Route 51 in Decatur. The officers had with them a dog trained to sniff for odors of cannabis. The actions of the dog indicated that the trunk of the vehicle needed to be searched. They discovered the trunk lock was broken, and, therefore, McLearin was required to open the trunk with a screwdriver. Inside the trunk, he found a large, green garbage bag which contained a brown leafy substance. A field test was conducted by use of a Bectin-Dickenson kit, and the substance in the bag tested positive for cannabis. The defendant was then ar-

rested, and defendant and the garbage bag containing the leafy substance were taken to a police station.

Wagoner further testified that, when they arrived at the police station, he interviewed defendant in regard to the cannabis found in the trunk. Wagoner said that defendant indicated the cannabis belonged to him solely and was for his personal use. He further stated that defendant indicated he was by himself when he picked the substance from a field in Ivesdale. Wagoner stated that he then put the cannabis in the detectives' closet on the third floor and locked it. On re-cross-examination, Wagoner was shown his investigation report, which did not refer to a question about whether defendant was alone at the time he picked the cannabis, and he admitted there was no such question in his report.

Decatur police officer Clifford Kretsinger testified that he subsequently tested the substance from the garbage bag and found it to be cannabis. He said he weighed the substance and found it to weigh in excess of 3,000 grams including the stalks. We later discuss the evidence of chain of custody of the garbage bag from the time it was delivered to the police station until Kretsinger tested and weighed the contents.

After the State rested its case, defendant's motion for a directed verdict was denied. Before defendant presented any testimony to the jury, he obtained permission to examine McCoy in chambers. There, McCoy testified that he had gone with defendant to a field near Ivesdale to pick marijuana on two occasions before November 1, 1985. McCoy agreed that this marijuana might have been placed in the trunk of defendant's car. McCoy further testified that he put a bag of marijuana in the trunk of defendant's car on November 6, 1985, after opening the trunk by use of a screwdriver. McCoy was then asked if his residence had been searched by the police, but the court sustained an objection on relevancy grounds. Then, in support of an offer of proof, McCoy testified that his house had been searched. The defense asked McCoy if he assisted the police in obtaining a warrant to search the trunk. The court again sustained an objection by the State.

In sustaining the second objection, the court reasoned that to require the question to be answered even as part of an offer of proof would have required the State to inform the defense as to whether McCoy was an informer and thus would have violated the informer's privilege. The principal issue in the case arose from this ruling.

Upon the objection being sustained, the defendant concluded his in-chambers examination of McCoy and announced that he would not be calling McCoy as a witness. Defendant then testified in his own behalf. He stated that on November 3, 1985, he had driven McCoy to Ivesdale

and helped him pick cannabis which was put in a green garbage bag. Defendant stated that the bag was placed in the trunk of his car, and they drove back to Decatur. Defendant further testified that on November 6, 1985, McCoy came to defendant's home, went to defendant's car, opened the trunk with a screwdriver, took out the garbage bag with the purported cannabis in it, brought it into the house and weighed it on the bathroom scales. According to defendant, McCoy then left with the bag. Defendant testified that he assumed that McCoy had taken the bag with him until the bag was later found in defendant's trunk by the law-enforcement officers.

■ We consider first the questions of the operation of the informer's privilege, and whether the defendant was entitled to know whether McCoy had assisted the State in obtaining the warrant for the search of defendant's automobile. Supreme Court Rule 412(j)(ii) states:

> "*Informants.* Disclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused. Disclosure shall not be denied hereunder of the identity of witnesses to be produced at a hearing or trial." 87 Ill. 2d R. 412(j)(ii).

The informant's privilege created by this exception to the general rule of disclosure in criminal cases is founded upon public policy considerations which are explained in the committee comments of the rule:

> "The value of informants to effective law enforcement is so highly regarded that encouragement of their use, through protection of their identity, has resulted in the development of one of the few privileges accorded to the State. The public interest in protecting the sources of information concerning the commission of crimes is served by providing for the non-disclosure of the identity of informants except when compelling circumstances require it. Disclosure should only be required when constitutional problems are raised or when the informant's identity is to be disclosed at trial." Ill. Ann. Stat., ch. 110A, par. 412(j)(ii), Committee Comments, at 611 (Smith-Hurd 1985).

The seminal case concerning the constitutional right of an accused to know the names of persons having firsthand knowledge of the commission of the offense charged even though that person is an informant is *Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623. There, the defendant had been charged in one count with a sale of narcotics to "one John Doe." Another count charged the defendant was fraudulently receiving, buying and importing narcotics.

Defendant filed a pretrial motion for a bill of particulars advising defendant as to the true name, address and occupation of the person to whom the narcotics were allegedly sold, but the trial court denied the request. At trial, the State's evidence revealed that the person identified as "John Doe" had been present at the time of the alleged offenses, but the trial court refused to allow cross-examination as to the identity of that person. The United States Supreme Court ruled that, because of the unidentified person's presence at the time of the crime, his testimony was highly material. Accordingly, the Supreme Court held that the informer's privilege was erroneously invoked to prevent disclosure of the identity of the person designated as "John Doe."

The court described the informer's privilege as actually being a privilege of the government to withhold the identity of persons who furnish it with information concerning law violations. The court discussed the question of whether disclosure is required in these words:

> "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro v. United States* (1957), 353 U.S. 53, 62, 1 L. Ed. 2d 639, 646, 77 S. Ct. 623, 628-29.

In *Smith v. Illinois* (1968), 390 U.S. 129, 19 L. Ed. 2d 956, 88 S. Ct. 748, an informant-occurrence witness, called by the State, testified in a State criminal trial and refused to give his name, claiming the informant's privilege. The United States Supreme Court held that the trial court deprived the defendant of his right of confrontation by not requiring the witness to give his real name. In *People v. Lewis* (1974), 57 Ill. 2d 232, 311 N.E.2d 685, and *People v. Perez* (1974), 25 Ill. App. 3d 371, 323 N.E.2d 399, the State's failure to disclose to the defense the names of informers who were eyewitnesses to the offenses was held to violate the rights of the defendants, because the defendants were thereby prevented from interviewing the witnesses and determining whether they had information that would be of aid to the defense.

A somewhat different situation was involved in *People v. Chaney* (1976), 63 Ill. 2d 216, 347 N.E.2d 138. There, the defendant knew Holt, who was an eyewitness to the various offenses charged, but did not know that he was an informer who had given a statement favor-

able to the State. The defense called Holt as a witness, and then the State severely impeached Holt with his prior statement. The Illinois Supreme Court held that the defendant's rights had been violated when, after it became apparent that Holt was to be called as a witness, the State did not inform the defendant that Holt was an informer and that the prosecution had a statement which would destroy his value as a defense witness.

Here, unlike the situation with the reputed informants in *Roviaro, Lewis,* and *Perez,* the name of McCoy had been listed by the defense in its discovery information given to the State and the defense was permitted to interrogate him in chambers about the offense. Unlike in *Smith* and *Chaney,* McCoy did not testify. Thus, the defense had no need of information by which he might be impeached as in *Smith,* nor was the defense embarrassed by the State's impeachment as in *Chaney.* The defense contends that it needed to know whether McCoy was an informant because it would have borne on whether to attempt an affirmative defense of entrapment. However, defendant would know whether he had been entrapped, but he put on no evidence to that effect. The evidence presented showed that defendant went with McCoy to Ivesdale to pick cannabis without any indication of reluctance. There was no evidence that McCoy had persuaded defendant. (See *People v. Andreano* (1978), 64 Ill. App. 3d 551, 381 N.E.2d 783.) If the defense wished to elicit the information in regard to McCoy's arrest in order to prove entrapment, it should have introduced some foundation proof of entrapment.

■ We have discussed the question of the necessity of disclosing whether McCoy was an informer only in connection with the court's refusal to require disclosure during McCoy's in-chambers interrogation. Defendant also contends that under *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, and its progeny, the State was required to make this disclosure in giving discovery. The *Chaney* court considered this argument but held that because the *Brady* requirement is merely to disclose information that would be favorable to the defense, that type of early disclosure was not required to show that the witness, Holt, was an informant. It was required to be disclosed only when the defense called Holt as a witness. Here, if McCoy was an informant, that fact would not have been favorable to the defense, and the State had a duty to disclose only if McCoy were called.

The *Roviaro* court noted that, because the purpose for the informant's privilege is to protect the informant from injury by the accused and those in concert with the accused, no purpose is served by permit-

ting exercise of the privilege when the accused knows of the identity of the informant. Defendant asserts that he knew McCoy was an informant and that, therefore, McCoy should not have been permitted use of the privilege. The warrant was issued pursuant to a verified complaint executed by a "John Doe" who stated that he was present when defendant opened the trunk of his vehicle and "observed a large plastic bag containing a large quantity of a greenish brown leafy substance" which the complainant identified as cannabis. Considering this statement in the light of the testimony, it would seem likely that McCoy was the complainant. However, there was no certainty that this was so. Moreover, unlike in *Roviaro*, McCoy was known to defendant and was present at trial. Thus, the purpose in knowing whether McCoy was an informer would concern his impeachment as a witness. This information was useless, because he did not testify.

■ During the in-chambers interrogation of McCoy, the court sustained objections to various questions which were asked him by defense counsel concerning his arrest and the search of his home. The trial court also quashed a subpoena seeking records concerning the arrest of McCoy and the search of his premises. Defendant contends that the questioning and the subpoena were for the purposes of showing that he was entrapped by McCoy, who was an informant. Whether McCoy was working with law-enforcement people would bear upon the defense of entrapment. However, as we have indicated, the defense failed to make any showing that defendant had the state of mind or acted in a manner consistent with entrapment. (See *People v. Andreano* (1978), 64 Ill. App. 3d 551, 381 N.E. 783.) Accordingly, we find no error in the rulings of the trial court in regard to defendant's attempts to elicit information concerning McCoy's relationship with the State.

The evidence of the chain of custody of the garbage bag taken from defendant's trunk began with the testimony of Wagoner that on the day of arrest, November 6, 1985, he took possession of the bag, brought it to the police station, tagged it and placed it in the vault in the detective-bureau closet on the third floor of the police station. He testified that only he and other detectives had access to that vault. Sometime thereafter, the bag was apparently placed in a vault on the first floor. According to Wagoner, on the Friday before trial, he returned the bag to the locker on the third floor. Then, according to Kretsinger's testimony, on January 25, 1986, the day before he testified, he performed tests on this substance in a bag which he had obtained from the third-floor locker and found the substance to contain cannabis and to be a weight in excess of 3,000 grams.

■ The procedure used for keeping track of the chain of custody of the cannabis was careless, and gaps existed. However, that does not necessarily negate the introduction of the substance into evidence or, more importantly, the introduction into evidence of the results of the tests and weighing performed by Kretsinger. (*People v. Tribett* (1981), 98 Ill. App. 3d 663, 424 N.E.2d 688.) If the possibility of tampering with a substance is extremely unlikely, it may be admitted into evidence even if the evidence of the chain of possession is faulty. (*People v. Gustowski* (1981), 102 Ill. App. 3d 750, 430 N.E.2d 317.) Such was the case here. Wagoner testified that, except for the substance having been separated into several smaller bags, it appeared to be in the same condition at trial as it was on the day of seizure. Wagoner also testified that when he saw the garbage bag on the Friday before trial it was sealed. Defendant admitted that he picked a plant which he thought was cannabis. Evidence was introduced that the substance seized appeared to be cannabis, and a superficial field test indicated that the substance was cannabis.

■ The chain of possession when large plants such as cannabis are involved need not be as complete as in cases where very small substances such as powder containing heroin are involved. That was the situation in *People v. Maurice* (1964), 31 Ill. 2d 456, 202 N.E.2d 480, cited by defendant, where the court reversed a conviction based upon the gap in the proof of chain of possession of the heroin, which was the subject matter of the charge. The trial court did not err in admitting into evidence the contents of the garbage bag and the evidence of the tests performed on the substance in the bag.

Notably, the defendant admitted picking the substance, transporting it from Ivesdale to Decatur, and knowingly having it in the trunk of his vehicle in Decatur sometime on the day of the offense, November 6, 1985. Thus, defendant would have committed the offense charged on the day charged even if, as he maintains, he did not know of the existence of the substance in the trunk of his vehicle at the time he was stopped.

As we have previously stated, we affirm the conviction and sentence.

Affirmed.

McCULLOUGH, P.J., and WEBBER, J., concur.