THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HECTOR GOMEZ, Defendant-Appellant.

First District (1st Division)    No. 78-247

Opinion filed December 11, 1978.

Ralph Ruebner and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Joseph P. Quirk, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant, Hector Gomez, was charged by information with the offense of possession of a controlled substance. (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b).) After a bench trial, defendant was found guilty and was sentenced by the trial court to 3 years probation to be served in the Commonwealth of Puerto Rico. The defendant appeals, contending that he was denied a fair hearing on his motion to suppress evidence.

The proceedings in this matter consist of three hearings. The first was the hearing on defendant's motion to suppress physical evidence. Police Officer Karl, a narcotics investigator, testified that at approximately 1:30 p.m. on August 23, 1977, he had a conversation with an informant in the vicinity of Dakin and Sheridan Road in Chicago. The informant related that a person known to him as Hector was selling heroin in the vicinity of the 3800 block of North Sheridan Road. The informant further stated that Hector, who was approximately 5 feet 10 inches and 210 pounds and who was later identified as defendant, kept his heroin in a 1965 Ford, which had a brownish-gold body and black top. This automobile's license plate number was allegedly GK 8050. The informant stated that he did not know of his own knowledge that defendant was selling heroin on the day in question, but indicated he had purchased heroin from the defendant on numerous occasions in the past. Officer Karl testified that this information had been used earlier the same day and that his tip had led to the recovery of an amount of heroin. Acting on this information, the police officer set up surveillance on the second floor of a factory located at 926 West Sheridan Road. At approximately 2:15 p.m., he observed defendant through a pair of binoculars. At this time, defendant was standing approximately 4 feet from a 1968 Ford, which had a brownish-gold body and black top and was parked at 3842 North Wilton. The license plate number of this car was GK 8050.

During the 35 minute surveillance, Officer Karl observed the defendant come in contact with two people. The first individual was a woman, who walked up to defendant and engaged him in conversation. As they were conversing, she handed something to the defendant. The defendant then went to the car, opened its door with a set of keys, took something out of it, returned to the woman and handed that person something. The woman then placed her hand over her mouth. Based on his 4½ years of experience as a narcotics investigator, Officer Karl stated that, when a person buys narcotics from a dealer on the street, he normally places the substance in his mouth so that he can swallow it should the police appear.

On cross-examination, Officer Karl conceded that he could not see what had changed hands between the defendant and the aforementioned woman. He stated that he only saw the two hands meet. The police

officer also admitted that the woman could have been coughing when she put her hand to her mouth. Approximately 10 minutes after making the first observation, Officer Karl viewed a male walk up to defendant and hand something to him. Once again, the defendant went to the car, opened the vehicle's door with a set of keys, took something from the car, returned to the man and handed something to him. On cross-examination, Officer Karl admitted that the defendant and the man could have been shaking hands, as he could not see what, if anything, had been exchanged. He also testified that this man did not put his hand to his mouth subsequent to these actions and that neither this man nor the woman were apprehended by the police.

Defense counsel then asked the police officer if the informant was a man or a woman, if the informant had an arrest record, and if the informant was a drug addict. The prosecution objected to each of these questions and these objections were sustained by the trial court.

After the second meeting took place, Officer Karl left his surveillance location and went down to the street in order to place the defendant under arrest. After arresting defendant, Officer Karl searched him. Using a set of keys found in defendant's pocket, the police officer opened the car and then searched it without a search warrant. During the search he discovered a package of what appeared to be brown powder, which was located on the top of the visor on the driver's side of the car.

After hearing the aforementioned evidence, the trial court denied defendant's motion to suppress the evidence. The court also found that there was probable cause for the search of the automobile and that the evidence was properly recovered. Additionally, the trial court stated that it was satisfied that the information given to the police officer by the informant was reliable.

A preliminary hearing then ensued with both sides stipulating to the testimony presented during the hearing on the motion to suppress. Officer Karl, called once again by the prosecution, identified the defendant in court. The prosecution then read the lab report into the record, which indicated that one clear bag containing 12 smaller bags of brown powder was submitted to the lab and that the contents of two of these bags were tested. The test indicated that these two bags contained heroin. The total weight of all the bags was 6.1 grams.

On cross-examination, Officer Karl testified that he did not see the defendant in actual possession of the contraband and that the brown 1968 Ford proved to be registered to a person bearing defendant's name. The police officer also admitted that he had temporarily lost sight of the defendant when he walked down to the street in order to arrest him. After hearing this evidence, the trial court entered a finding of probable cause.

Following a recess, the trial began with the prosecution being

granted leave to file an information against the defendant. Defense counsel then renewed his motion to suppress the evidence. This motion was denied. On defense counsel's motion, all of the testimonial evidence adduced during the motion to suppress and the preliminary hearing was incorporated into the record. Both sides rested and waived argument. The trial court then found defendant guilty as charged. Thereafter, on the recommendation of both attorneys, the court sentenced the defendant to 3 years probation to be served in the Commonwealth of Puerto Rico.

Defendant contends that the trial court erred when it refused to permit the defense counsel to inquire about the sex of the unknown informant, whether the police officer had arrested the informant prior to this matter, and whether the informant was a drug addict. Because of this, defendant argues that he was denied a fair hearing on his motion to suppress the physical evidence seized from his automobile. We cannot agree with this contention.

Illinois recognizes a privilege against the disclosure of the identity of an informant in certain situations. Supreme Court Rule 412(j)(ii) states:

> "Disclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused. Disclosure shall not be denied hereunder of the identity of witnesses to be produced at a hearing or trial." Ill. Rev. Stat. 1977, ch. 110A, par. 412(j)(ii).

In *Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623, the United States Supreme Court gave thorough consideration to one aspect of the informer's privilege. Unlike the present case, *Roviaro* involved the informer's privilege, not at a preliminary proceeding to determine probable cause for an arrest or search, but at the trial itself where the issue was the fundamental one of innocence or guilt. Initially, the court reiterated its recognition of this privilege. It stated:

> "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." (353 U.S. 53, 59, 1 L. Ed. 2d 639, 644, 77 S. Ct. 623.)

However, the court then pointed out that the scope of this privilege is limited where fundamental fairness requires revelation of the identity of the informer. Such a situation would be where the "disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause * * *." (See also *Scher v. United States* (1938),

305 U.S. 251, 254, 83 L. Ed. 151, 154, 59 S. Ct. 174.) In this regard, the court further stated:

> "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. 53, 62, 1 L. Ed. 2d 639, 646, 77 S. Ct. 623.

■■■ Several Illinois cases, although not dealing with the issue of guilt or innocence, subsequently adopted the test enumerated in *Roviaro*. (See, *e.g.*, *People v. Durr* (1963), 28 Ill. 2d 308, 313-14, 192 N.E.2d 379; and *People v. Mack* (1957), 12 Ill. 2d 151, 165-67, 145 N.E.2d 609.) However, in *People v. Lewis* (1974), 57 Ill. 2d 232, 235, 311 N.E.2d 685, our supreme court indicated that the aforementioned balancing test was not applicable "to preliminary hearings, motions to suppress, or similar pretrial proceedings." Police officers need not invariably be required to disclose an informant's identity in these proceedings if the trial court is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable informant. (See *McCray v. Illinois* (1967), 386 U.S. 300, 305-14, 18 L. Ed. 2d 62, 67-72, 87 S. Ct. 1056.) In view of the precedent of *Lewis*, and the accurate information given to the arresting police officer by the informant in this case, we are of the opinion that the trial court acted properly when it sustained the State's objections to the aforementioned questions asked by defense counsel.

■■ Nonetheless, even if the *Roviaro* test is applied to this situation, we do not see how the defendant was prejudiced. Here, the record reflects that the informer took no part in defendant's arrest, and he did not participate in defendant's crime or help set up its commission. Nor does it appear that the testimony of the informer would be relevant or helpful to the defense. Under such circumstances, we cannot say that defendant had demonstrated that he was unfairly deprived of presenting any element of his defense during the course of the trial of this matter. Compare *People v. Chaney* (1976), 63 Ill. 2d 216, 225-26, 347 N.E.2d 138.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.