THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID GRESHAM, Defendant-Appellant.

Fourth District    No. 16523

Opinion filed June 3, 1981.

Daniel D. Yuhas and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE TRAPP delivered the opinion of the court:

After a jury trial, defendant, David Gresham, was convicted of the delivery of a controlled substance containing less than ·200 grams of amphetamines. (Ill. Rev. Stat. 1977, ch. 56½, par. 1401(c).) Defendant was sentenced to 3 years' imprisonment. On appeal, he contends that the trial court erred by refusing his Illinois Pattern Jury Instructions, Criminal, instruction on entrapment, and by refusing to disclose the identity of confidential source No. 250.

A recitation of both parties' accounts of the events leading up to the defendant's sale of amphetamines to a law enforcement officer is neces-

sary. At trial, Bloomington Police Officer Steven Reeter testified that he drove to Miller Park in Bloomington on the evening of November 15, 1979. Another person—confidential source No. 250—was also in the car. Defendant and a woman companion approached and asked if they could sit in the car. After the defendant entered the car, defendant asked Reeter if he knew anyone who needed "whites." Reeter said that he would be interested if the "whites" were good, and made arrangements to meet defendant at noon the following day. Reeter did not know defendant.

The next day Reeter returned to the park and waited for defendant. Upon arrival, defendant asked Reeter how many "whites" he needed. Reeter responded that he would buy 200 if the price was $20 per 100. Reeter gave defendant $40, and defendant left the park in his pickup truck. He returned to the park about 15 minutes later and handed Reeter four small plastic bags containing white tablets. Defendant left Reeter's car, and Reeter took the tablets to his office.

Reeter also testified that as an undercover agent he had made between 50 and 60 "buys" of hard drugs. He attempted to gain the confidence of the people with whom he dealt, but did not smoke marijuana or take hard drugs in order to ingratiate himself with prospective sellers. However, Reeter sometimes "simulated smoking" marijuana by smoking a regular cigarette, holding the smoke in his lungs, and pretending to smoke a marijuana cigarette. Reeter testified that he did not drink beer or smoke marijuana with defendant.

During cross-examination of Reeter, the trial court sustained an objection to defense counsel's request for disclosure of the name of confidential source No. 250, who was also present in the car when defendant and Reeter initially met. (Prior to trial, the defense counsel had made the same request. However, the trial court had taken the motion under advisement.)

Although the defendant admitted selling amphetamines to Reeter, his account of the events was substantially different from Reeter's account. Defendant testified that one evening he and his woman companion were in a park when a car containing three people drove by. One of the passengers, Dan Grover, yelled for defendant's woman companion to come to the car. She went to the car and talked to one of the participants for about five minutes. Then, Reeter called the defendant to the car and invited him in. Once inside, defendant observed the passengers smoking marijuana and drinking beer. Defendant and his woman companion shared a beer and several marijuana cigarettes with the other passengers in the car.

Defendant testified that he noticed that Reeter was sweating and shaking even though his window was down and it was cold outside. Defendant thought that Reeter was going through withdrawal pains.

Defendant was familiar with withdrawal symptoms because several of his friends had gone through withdrawal. Reeter said that he needed "whites" "real bad" because his regular supplier had left town. Reeter said he would pay $20 for 100 "whites." Defendant testified that he did not usually sell drugs but he agreed to help Reeter because he was acting as if he was "really tormented" by withdrawal pains. Reeter wanted defendant to get the drugs immediately, but defendant said that he would have to make some phone calls. He agreed to meet Reeter at the same place at noon of the following day.

Defendant testified that after staying in the car approximately another 45 minutes, he left the park. About two hours later, at 8 p.m., he received a telephone call from Reeter who reminded defendant that it was important to get the drugs. Defendant again agreed to meet Reeter the next day. Defendant received a similar call from Reeter at 2 a.m.

The next day, the defendant testified that he went to work at the family business. When he returned from lunch, he was told that Reeter had called twice to tell him not to forget to come to the park. Defendant testified that he had forgotten about the appointment. He met Reeter in the park and Reeter said that he wanted 250 tablets. Reeter, who was still appearing as if he was going through withdrawal pains, gave defendant two $20 bills and a $10 bill. Defendant made a telephone call from a laundromat near the park, and purchased five bags of amphetamine tablets. Defendant gave the entire $50 to the seller and he gave all five bags of the contraband to Reeter.

In rebuttal, Reeter denied that he had feigned withdrawal symptoms on November 15 and 16, or that he had telephoned defendant on either day. Reeter also denied that he had "simulated smoking" marijuana during the conversation with defendant on November 15.

Defendant does not argue that his trial testimony established the affirmative defense of entrapment as a matter of law; rather, his contention is that his testimony raised a factual question of whether he was entrapped, which should have been decided by a properly instructed jury. The trial court refused the defendant's jury instruction on entrapment because it thought that the defendant's evidence, even assuming its veracity, did not prove entrapment as a matter of law. In other words, the trial court found that the defendant had not presented enough evidence of the defense of entrapment to justify a jury instruction on that defense. The trial court, noting that it was not the trier of fact, apparently found that there was no evidence of inducement—"[H]e [defendant] was presented with the opportunity to commit an offense and he chose to do so."

■■ In a jury trial, it is well established that the issue of whether the defendant had been unlawfully entrapped is a factual question for the jury (*People v. Tipton* (1980), 78 Ill. 2d 477, 401 N.E.2d 528; *People v.*

*Estrada* (1980), 91 Ill. App. 3d 228, 414 N.E.2d 512; *People v. Pates* (1980), 80 Ill. App. 3d 1062, 400 N.E.2d 553; *People v. Carpentier* (1974), 20 Ill. App. 3d 1024, 314 N.E.2d 647) unless the court can decide the question as a matter of law. (*Tipton; Estrada; Carpentier.*) Here, the court refused the jury instruction because it found that entrapment did not exist as a matter of law. Thus, on review of this case, we must not act as finders of fact nor weigh the sufficiency of the evidence. Rather, we must determine whether defendant presented evidence, which, if believed, established the elements of the entrapment defense.

Under Illinois law, entrapment is defined as follows:

"Entrapment. A person is not guilty of an offense if his conduct is incited or induced by a public officer or employee, or agent of either, for the purpose of obtaining evidence for the prosecution of such person. However, this Section is inapplicable if a public officer or employee, or agent of either, merely affords to such person the opportunity or facility for committing an offense in furtherance of a criminal purpose which such *person has originated.*" (Emphasis added.) Ill. Rev. Stat. 1979, ch. 38, par. 7—12.

■■ The above statute and Illinois case law evince that there are four principal elements of the entrapment defense: (1) The concept of committing the offense originates with the State or its agent, (2) who actively encourage the defendant to commit the offense, (3) for the purpose of obtaining evidence for his prosecution, and (4) the defendant was not predisposed to commit the offense. *People v. Cross* (1979), 77 Ill. 2d 396, 396 N.E.2d 812; *People v. Lewis* (1967), 80 Ill. App. 2d 101, 224 N.E.2d 647.

No instruction upon the issue of entrapment was given. The trial court denied defendant's tendered instruction in the language of Illinois Pattern Jury Instructions, Criminal, No. 24.04 (1968). The second paragraph of that instruction follows the language of the statute:

"However, the defendant was not entrapped if a public officer merely afforded to the defendant the opportunity or facility for committing a crime in furtherance of a criminal purpose *which the defendant originated.*" (Emphasis added.)

In *People v. Pates* (1980), 80 Ill. App. 3d 1062, 400 N.E.2d 553, *aff'd* (1981), 84 Ill. 2d 82, 417 N.E.2d 618, the trial court refused defendant's instruction in the language of the second paragraph of IPI Criminal No. 24.04, but chose to give the prosecution's instruction that defendant was not entrapped if a public officer "merely afforded to the defendant the opportunity * * * for committing a crime which he was willing to commit." The opinion stated:

"The question is not whether the defendant intended to commit

the crime, but whether the intent originated in his mind." 80 Ill. App. 3d 1062, 1066, 400 N.E.2d 553, 557.

The court stated further:

"A showing that defendant is willing to commit the crime is not enough to overcome the defense of entrapment. A demonstration that he is willing to commit it in furtherance of a criminal purpose which he originated is enough to overcome the defense." 80 Ill. App. 3d 1062, 1065, 400 N.E.2d 553, 556.

The testimony of the two persons participating, Reeter and defendant, respectively, was directly conflicting. Reeter testified that defendant sought a purchaser. Defendant testified that Reeter asked to buy, together with incidental matters relating to Reeter's apparent need.

The colloquy of the trial court discloses that in ruling he chose the standard of defendant's willingness to commit the offense and disregarded the factors in both the statute and the pattern instruction which requires that the scheme of the offense originate with defendant. The testimony of defendant, if believed by the jury, would have supported a determination of the trier of fact that the scheme for the transaction originated with Reeter.

By reason of the court's ruling, the jury was precluded from determining a factual issue of a necessary element of affirmative evidence in the entrapment defense. The conviction must be reversed.

Defendant contends that the trial court erred when it refused the defendant's request to disclose the identity of the confidential source. The issue may recur upon a new trial.

Defendant's request for said disclosure was made orally on the day of trial. It was renewed and argued during the testimony of the prosecution witness, Reeter. The trial judge determined "that there has been no showing that such disclosure is necessary," and that the request for the disclosure was not timely made.

Supreme Court Rule 412(j)(ii) (73 Ill. 2d R. 412(j)(ii)) considers discovery of informants in the following language:

"Disclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused."

As to such provision, the Committee Comments state:

"The value of informants to effective law enforcement is so highly regarded that encouragement of their use, through protection of their identity, has resulted in the development of one of the few privileges accorded to the State. The public interest in protecting the sources of information concerning the commission of crimes is served by providing for the non-disclosure of the identity

of informants except when compelling circumstances require it." Ill. Ann. Stat., ch. 110A, par. 412, Committee Comments, at 682 (Smith-Hurd 1980).

That policy was recognized in *Roviaro v. United States* (1957), 353 U.S. 53, 59, 1 L. Ed. 2d 639, 644, 77 S. Ct. 623, 627, where the court said:

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. [Citations.] The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement."

The application of the Rule is stated in *People v. Lewis* (1974), 57 Ill. 2d 232, 235, 311 N.E.2d 685, 687. That opinion analyzes the policy of *Roviaro* in the language:

" 'We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the *particular circumstances of each case*, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.' " (Emphasis added.)

The opinions in *Roviaro* and *Lewis* are presented in the factual framework that, as to the transactions considered, the informers whose identity was sought acted in the "dual roll of informer-participants." It was significant that in each case there was contradiction between the testimony of the police officer and that of the defendant, and in each instance the undisclosed informer was the only other person present with the parties. In each case the undisclosed informer who had arranged for the sale or delivery was present and participated in the doing of the business.

Here, there is a clear difference. From the record, including defendant's own testimony, we discover that while the informer had the status or the employment as a confidential source, in the several aspects of the transaction he was not serving in the role of informant and he did not in any way participate. The initial meeting in the park was apparently by chance. Defendant did not know informant and the latter did not seek out defendant, identify or introduce him to Reeter. Defendant was brought into contact with Reeter either by defendant's woman companion who left defendant to go to Reeter's automobile, or by defendant's acquaintance Grover, who was present in Reeter's car. It is not claimed that the informant did participate in any conversation between Reeter and

defendant, nor did he arrange for the subsequent meeting. Defendant's testimony discloses that the informant neither had connection with defendant's source of supply nor any knowledge of it. There is no claim by defendant that the informant was present on the following day when the sale was made.

While the record does not disclose that defendant ever responded to the prosecution's motion for discovery as provided in Supreme Court Rule 413(d)(i), his testimony makes clear that he knew the identity of the woman companion who was present as well as his acquaintance Grover, each of whom was said to be present in the vehicle at the time of the conversation in question. Defendant does not represent that either the woman or Grover were unavailable, had ever been interviewed, or that they were otherwise unable to testify.

In *People v. Rinaldo* (1976), 34 Ill. App. 3d 999, 341 N.E.2d 166, defendant contended that it was reversible error to deny his motion to disclose the name and address of an informant who supplied information which was the basis for a search warrant. The reviewing court concluded:

> "The defendant's request for disclosure of an informant's identity is not to be granted automatically. Where a request has been denied by the prosecution, the defendant bears the burden of demonstrating to the court the necessity for disclosure in his particular case. [Citations.] In determining whether an informant's identity should be disclosed, it is necessary for the court to balance the defendant's need for the identity of the informant for the purpose of preparing an adequate defense against the public interest in protecting the informant's identity, thereby encouraging citizen participation in crime control." 34 Ill. App. 3d 999, 1001, 341 N.E.2d 166, 168.

In *Rugendorf v. United States* (1964), 376 U.S. 528, 534, 11 L. Ed. 2d 887, 892-93, 84 S. Ct. 825, 829, it was contended that defendant was entitled to learn the identity of the informant who supplied information for issuance of a search warrant. The opinion notes that defendant's motion was an apparent attempt to bring the case within the rule of *Roviaro* where the informant had played a direct part in the offense. The court continued:

> "But there was not even an intimation of such a situation at the trial here. The necessity for disclosure depends upon 'the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.' [Citation.] Petitioner did not develop any such criteria with reference to the merits of the case."

■■ The record in this case upon the facts presented fails to disclose that

defendant ever presented any adequate reason which would require disclosure of the confidential source.

The cause is reversed for refusal of defendant's tendered instruction and remanded for further proceedings.

Reversed and remanded.

GREEN and WEBBER, JJ., concur.