THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* GREGORY H. COLEMAN, Defendant-Appellee.

Third District   No. 3—83—0465

Opinion filed May 31, 1984.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and Jean Herigodt, both of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Defendant Gregory Coleman was charged with unlawful possession with intent to deliver a controlled substance, unlawful possession of a controlled substance, unlawful use of weapons and resisting a peace officer as a consequence of his activities in Peoria during the early morning hours of May 8, 1983. The police had been tipped off about the defendant's involvement in suspected drug transactions by confidential police informants, one of whom purportedly witnessed the defendant's participation in a drug sale immediately prior to the arrival of police officers on May 8, when the defendant was arrested.

Various pretrial motions were filed, including defendant's "Motion for order upon State to produce name and address of occurrence witness." The court denied defendant's motion to quash arrest and suppress evidence on July 5, 1983, and granted the motion for disclosure of the informant who allegedly had witnessed the defendant's activi-

ties on the night of his arrest. The State refused to comply, the trial court dismissed charges, and the State perfected an appeal to this court.

The issues before us are: whether the trial court erred in granting defendant's motion for disclosure of the informant's identity; whether the trial court should have held an *in camera* hearing prior to ruling on defendant's motion; and whether the trial court's order dismissing all charges arising out of the May 8, 1983, events was overbroad. We affirm.

■ At issue are the defendant's sixth and fourteenth amendment rights to confront witnesses against him, to prepare his defense and to be tried fairly. In determining whether it should order the government to disclose the identity of its informer, the trial court must balance the public interest in protecting the flow of information to law enforcement officials against the defendant's legitimate interest in finding out the source of the government's charges against him to prepare his defense. (See *Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623.) Where the informer performs dual roles as an active participant in the charged offense(s) and as a police informant, the defendant's legitimate interests in his identity are enhanced. Similarly, where the government establishes that the informer's health and safety would be imperiled by disclosure, public policy concerns may outweigh the defendant's need or desire to learn the informer's true identity. See *People v. Lewis* (1974), 57 Ill. 2d 232, 311 N.E.2d 685.

The facts adduced at pretrial proceedings in this case present something of a hybrid situation. In addition to tipping the police that the defendant was allegedly selling drugs on the evening of the events giving rise to the charged offenses, the informer allegedly witnessed the defendant's activities forming the basis for the drug-related charges. He (she) is apparently the only witness who could corroborate or rebut the State's evidence of possession for the drug offenses.

According to the police officers who testified at the pretrial proceedings, the informant contacted the police about two hours before the incidents in question to report that a bald-headed man named Donald and an associate named Greg were selling narcotics in the area of the Bell Tap parking lot in Peoria.

The informant's description of Donald identified an individual known to the officers as Donald Willingham. The officer was unacquainted with the man named Greg. The officer and his partner, in plain clothes and in an unmarked vehicle, proceeded to the area of the Bell Tap parking lot and observed the defendant standing near the

rear of a 1975 Pontiac. This car was recognized by the officers as one which they had seen driven by Willingham. The trunk of the car was open and the defendant's hand was inside. The officers pulled up and approached the defendant. The defendant slammed the trunk, started to walk away from the car and then broke into a run. Both officers gave chase, and the defendant was ultimately captured by two other uniformed officers. When the pursuing plain clothes officers caught up to the defendant, they arrested him and sent him off in a paddy wagon to the jail.

The officers returned to the Bell Tap parking lot and were told by their informant, who had remained near the car during all of the above-described events, that the defendant had just "turned fat cherry" before the officers arrived on the scene. The street talk, translated, meant that the defendant had just sold some narcotics. The informant further said that narcotics were in the trunk of the Pontiac. The officers obtained a search warrant and opened the trunk pursuant to it. They discovered several small packages of cocaine, a loaded .38 revolver, a knife and some documents containing the defendant's name indicating that he had ordered some transmission work done on the vehicle. A sticker on the windshield of the car indicated that an application for a license for the car was in the name of Geraldine Russell, the defendant's fiancee. Upon the defendant's arrival at the jail, his possessions were inventoried, including about $117 in cash.

In addition to the foregoing facts relative to the instant charges, it was revealed during pretrial proceedings that a second confidential informant two weeks earlier had reported to the police that a man named Greg was selling narcotics in the area of the 500 and 600 blocks of Southwest Adams in Peoria. In requesting an order for disclosure, defense counsel specifically declined to ask for the identity of the earlier tipster. The prosecution did not attempt to establish that the health or safety of the on-the-scene informant was in jeopardy, but generally argued that since that informant was not actively involved as a co-possessor or otherwise in the charged offenses and would not be called upon to testify against the defendant, the defendant was not entitled to learn the informant's identity. The prosecutor suggested that an *in camera* interview be conducted so that the court could determine whether the on-the-scene informant's testimony might be helpful to the defense.

In ruling that disclosure would be required on these facts, the court specifically explained that it would be improper to conduct an *in camera* interview for the purpose suggested by the prosecution since

a decision by the court one way or the other would infringe on the duty of defense counsel to employ the strategy most advantageous to his client and make tactical decisions accordingly.

■ The trial court's authority to grant or deny an *in camera* hearing before ruling on discovery matters is discretionary under Supreme Court Rule 415(f). (87 Ill. 2d R. 415(f).) Specifically, the rule recites, "Upon request of any person, the court *may permit* any showing of cause for denial or regulation of disclosures, or portion of such showing, to be made *in camera.*" (Emphasis added.) The court's determination will not, therefore, be reversed on appeal unless an abuse of discretion is shown on the record.

The trial judge's decision in this case not to grant the prosecutor's request was neither arbitrary nor an abuse of discretion, but rather it was his opinion, fully considered, that an *in camera* hearing would be inappropriate. As observed by the Supreme Court in *Rovario*, "[t]he desirability of calling [the informant] as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." (*Roviaro v. United States* (1957), 353 U.S. 53, 64, 1 L. Ed. 2d 639, 647, 77 S. Ct. 623, 629.) The trial court in this cause, in declining to conduct an *in camera* hearing to decide whether or not disclosure of the informant's identity would be helpful to the defense, adhered to the spirit of *Rovario*.

■ Secondly, we find no error in the trial court's order of disclosure. Since the informant appears to have been the only witness who observed the defendant's activities before the police arrived at the Bell Top parking lot and, even more importantly, was the only available eyewitness who could state whether or not anyone might have opened the trunk of the Pontiac or placed anything in it while the arresting officers were chasing after the defendant (a period of 15 to 20 minutes), the informant may well be considered a material witness for purposes of proving or disproving the charges for which defendant's possession is an element. It is true, as the State contends, that since the informant in this case did not participate directly in the offenses charged, the facts before the trial court here are distinguishable from those in *People v. Lewis*. Nonetheless, we find that the reasoning applied by the *Lewis* court required disclosure here as well. In *Lewis*, the court considered three separate cases of narcotics violations in which informants played a role in the sale of drugs. The court summarized the crucial facts and the issue before it as follows:

> "The problem is clearly set forth in the instant cases, wherein in each instance only three persons were present at

each alleged sale, *i.e.*, the purchasing agent, the defendant, and the informer. Although there were other State agents on surveillance, in no instance were they able to corroborate the essential elements of sale. The defendants in each case denied the very presence of the purchasing agent and informer. Thus, there is corroboration for their presence at the scene, but not for the allegation of the act of sale." *People v. Lewis* (1974), 57 Ill. 2d 232, 235, 311 N.E.2d 685, 687.

In rejecting the State's contention that the informers were mere witnesses, but would not be called by the State to testify at trial and their identity need not therefore be disclosed to the defense, the *Lewis* court concluded that sufficient safeguards were in place for the protection of informers such that an infringement on the defendant's constitutional rights was not warranted.

"If the prosecution can establish that giving the name and address of the witness would jeopardize his health and safety, the informer's true name and address can be withheld. (*United States v. Palermo* (7th Cir. 1969), 410 F.2d 468; *United States v. Varelli* (7th Cir. 1969), 407 F.2d 735; *People v. Manzella* (1973), 56 Ill. 2d 187, 194.) In light of such safeguards, and the fact that the defendants in cases such as these will already know the informer by sight and may already know him or her by the assumed name, it is unfair to refuse to afford a defendant the opportunity of deciding for himself whether or not the informer could provide testimony helpful to the defense. To deny access to the informer in such circumstances is to deny to a defendant his sixth amendment rights as established by *Roviaro*." 57 Ill. 2d 232, 237, 311 N.E.2d 685, 688.

■ While the informant in the present case allegedly acted as a bystander rather than an active participant in the controlled substance and unlawful use of weapons offenses charged, the informant may well be the sole witness who can testify to any interference with the defendant's actual or constructive possession of the various items located in the trunk of the Pontiac. The defendant's "possession" is a crucial element of three of the offenses charged. Under the rule of *Lewis* and *Rovario*, to deny disclosure of the informer's identity on these facts would impair the defendant's sixth and fourteenth amendment rights to prepare his defense. For the foregoing reasons, we hold that the trial court ruled correctly in granting defendant's motion for disclosure.

■ Finally, the State argues that the trial court erred in dismissing the indictments for unlawful use of weapons and resisting arrest,

in addition to the narcotics charge, as a sanction for the prosecutor's refusal to comply with the court's order of disclosure. Since the informant was not a witness to these offenses, the State contends, the court had no authority to dismiss them. The State cites to no authority for its position on appeal. This issue was not raised at the trial court and may be considered waived for purposes of this appeal. We do not rely, however, on the principle of waiver to dispose of the issue. As indicated above, we believe that the unlawful use of weapons charge includes an element of possession which places the defendant's right to disclosure of the informant bystander's identity respecting the weapons offense on par with our reasoning respecting the narcotics charges.

With respect to the charge of resisting a peace officer, it appears that the State's position may have merit. The informant-witness to the other offenses appears to have remained in the vicinity of the Bell Tap parking lot, and the defendant's alleged resisting a peace officer offense appears to have taken place several blocks away from that scene at the point where he was apprehended by the uniformed officers. Nonetheless, we find that the charge of resisting a police officer in this case was a byproduct of police activity respecting the narcotics and weapons charges. This connection was, we believe, sufficient to render the trial court's dismissal of the former charge a matter within the court's discretion. On this basis, and having found no abuse of the trial court's discretion, we affirm the dismissal of the charge of resisting a peace officer.

For the foregoing reasons, we affirm the order of the circuit court of Peoria County.

Affirmed.

HEIPLE and STOUDER, JJ., concur.