THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. GEORGE MICHAEL RAESS, Defendant-Appellee.

First District (5th Division)   No. 85—1507

Opinion filed August 1, 1986.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Timothy W. Heath, and Jonathan S. Solovy, Assistant State's Attorneys, of counsel), for the People.

Gerald M. Werksman, of Chicago, for appellee.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal by the State, pursuant to Supreme Court Rule

604(a)(1) (87 Ill. 2d R. 604(a)(1)), from orders (a) requiring it to disclose the identity of an informant, and (b) dismissing defendant's indictment following its refusal to do so.

Prior to trial on his indictment for delivery of a controlled substance (Ill. Rev. Stat. 1983, ch. 56½, par. 1401), defendant filed a motion requesting production of or information concerning a police informant involved in the case together with an affidavit which is summarized as follows.

At about 2 a.m. on May 20, 1984, defendant noticed a large, well-built black man on a bicycle circling the gas station where he worked in Palatine, Illinois. He had never seen the man before and was "somewhat intimidated" by his size and fearful as he watched him circle the gas station, but he could not lock the door because the key had been misplaced earlier that night. The man then entered the building and, after purchasing some groceries, introduced himself as "Vinnie" and initiated a conversation about bicycle riding and body building. When defendant commented on Vinnie's physical fitness, Vinnie suggested they get together to "work out" some night and they then exchanged telephone numbers. Just before leaving, Vinnie asked whether he had any marijuana or cocaine. When defendant replied negatively Vinnie asked whether he could obtain any, explaining that he had been dealing in drugs but had lost his previous source and badly needed money. He was particularly interested in securing an "8-ball"—which, he explained, was one-eighth ounce of cocaine— because he knew several potential purchasers in Chicago and asked defendant to try to get some and to call him. Although he did not intend to honor either request, defendant responded "okay," and Vinnie then left.

Approximately 10 days later, Vinnie returned to the gas station and asked defendant why he had not called him, stating that he would be seeing some friends at the beach on Saturday and wanted an "8-ball." In contrast to their first meeting, on this second occasion Vinnie was in a hurry and interested only in finding out whether defendant could supply him with some cocaine. Assuming that because Vinnie lived in Chicago and did not come by often, he eventually would give up, defendant told him that he would inquire about getting some at a party he planned to attend on Friday night. It was his intention only to ask whether anyone there had any and, if so, to give his or her telephone number to Vinnie, but when he saw people at the party "doing lines," he asked if he could have some. He was given what he thought was one-fourth gram but, actually, it was only a "line"—which, he learned, was a smaller amount.

He planned to give it to Vinnie the next day and to explain that it was all that he could obtain, but when Vinnie did not come to the gas station as he said he would, defendant was relieved, thinking that perhaps Vinnie had "given up" on him. A few days later, however, Vinnie called him at home to ask if he had found any cocaine. Responding that he had, Vinnie told defendant to meet him at the gas station, but when he arrived, Vinnie refused the amount he had acquired at the party, saying that he needed more and that he wanted defendant to meet his "partner." When Vinnie called again, on June 11, defendant informed him that he did not have any more cocaine, but Vinnie nevertheless wanted to meet at 2 p.m. Defendant agreed to do so but he remained at home instead, hoping that when he failed to appear at the scheduled time, Vinnie would leave and finally "give up." However, at 2:15, Vinnie called again, told defendant that he and his "partner" from Chicago were waiting and that he should "hurry up and get up here." When defendant arrived, Vinnie introduced him to his partner, "John," an older man who was about 6 feet 2 inches tall, 190 pounds, bearded and dressed in dirty clothes. John seemed to be "in control" and after taking the "line" of cocaine that Vinnie had previously refused, asked him to get two ounces more before the weekend, stating that he needed it quickly because some of his customers had already paid him for it and were becoming very angry. On June 13, John called defendant at least six times asking for the cocaine. Tiring of these calls, defendant, at some point that afternoon, called the number Vinnie had given him to ask Vinnie to tell John to leave him alone, but an older woman answered and told him that Vinnie was "in some kind of trouble" and was not there. Frightened, defendant told John, when he called back, that he was not a drug dealer, did not want to become involved and regretted having tried to do a favor for Vinnie, but when John persisted, saying that he badly needed the cocaine and that he knew defendant could get it for him if he "tried hard enough" defendant became even more frightened and finally agreed to meet John on June 18, at which time he was arrested and charged with the illegal sale of more than 30 grams of cocaine. At the March 25 hearing on defendant's motion for disclosure of Vinnie's identity, defendant, through his counsel, admitted delivery of the contraband but claimed that he had been entrapped.

In granting defendant's motion for disclosure of the information possessed by the State concerning Vinnie, the trial court found, on the basis of defendant's affidavit, that Vinnie "could be very relevant and instrumental in the preparation of [an] entrapment defense" and

that defendant should, therefore, have the opportunity to interview him prior to trial for the purpose of preparing that defense. The State initially agreed to provide the information within 10 days, but instead filed a motion for reconsideration of the disclosure order together with a memorandum in support thereof. After a hearing, that motion was denied, whereupon the State advised the court that it would not comply with the order, stating,

> "We understand there are sanctions the Court can enter. Whatever, we respectfully decline to to introduce [sic] that informant."

Defendant then moved for dismissal of the indictment, arguing that any other sanction would be meaningless. The trial court agreed, stating to the prosecutor,

> "Unless you have some position that you would urge at this point, it seems to me that this defendant is being deprived of his right of confrontation and right to prepare [an] adequate defense[.] [O]f the sanctions that are given in the rules, I am at a lost [sic] to perceive of any that would be appropriate, save dismissal."

When the State offered no alternative to nor argument against dismissal, the trial court dismissed the indictment, and this appeal followed.

OPINION

The State first contends that the trial court erred in ordering disclosure of Vinnie's identity, arguing generally that defendant failed to demonstrate a need for disclosure sufficient to overcome the strong public-policy considerations underlying the "informer's privilege" set forth in Supreme Court Rule 412(j)(ii), which provides:

> "Disclosure of an informant's identity shall not be required where his identity is a prosecution secret and a failure to disclose will not infringe the constitutional rights of the accused. Disclosure shall not be denied hereunder of the identity of witnesses to be produced at a hearing or trial." 87 Ill. 2d R. 412(j)(ii).

As correctly asserted by the State, the informant's privilege created by this exception to the general rule of disclosure in criminal cases is founded upon public-policy considerations, which are explained in the committee comments on the rule:

> "The value of informants to effective law enforcement is so highly regarded that encouragement of their use, through protection of their identity, has resulted in the development of one

of the few privileges accorded to the State. The public interest in protecting the sources of information concerning the commission of crimes is served by providing for the non-disclosure of the identity of informants except where compelling circumstances require it. Disclosure should only be required when constitutional problems are raised or when the informant's identity is to be disclosed at trial \*\*\*." Ill. Ann. Stat., ch. 110A, par. 412(j)(ii), Committee Comments, at 611 (Smith-Hurd 1985).

■ The privilege is not, however, absolute, its scope being limited by fundamental requirements of fairness. (*Roviaro v. United States* (1957), 353 U.S. 53, 1 L. Ed. 2d 639, 77 S. Ct. 623.) In *Roviaro* the government filed a two-count complaint against defendant charging him with the illegal sale and transportation of narcotics. Prior to trial, defendant filed a motion requesting the name, address and occupation of an undercover government informant who, he claimed, had been an active participant in the illegal activity and might, therefore, be a material defense witness. The trial court denied the motion and disallowed any cross-examination regarding the informant's identity on the ground that it was privileged. Defendant was found guilty and sentenced on both counts. The government did not defend its nondisclosure of the informant's identity with respect to the sale, but argued that the conviction on the charge of illegal transportation of narcotics should be upheld because the identity of the informant had no bearing thereon and was, therefore, privileged information. The Supreme Court disagreed, holding,

"Where the disclosure of an informant's identity \*\*\* is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the government withholds the information, dismiss the action. \*\*\*

\*\*\*

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. 53, 60-62, 1 L. Ed. 2d 639, 645-46, 77 S. Ct. 623,

628-29.

Finding, upon a review of the record before it, that the informant "had helped to set up the criminal occurrence" and, as the sole participant other than the accused in the transaction charged, "had played a prominent part in it" and that "[h]is testimony might [therefore] have disclosed an entrapment," the *Roviaro* court held that "the desirability of calling [him] as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide," and concluded that under the circumstances of the case, the trial court, by permitting the Government to withhold the informant's identity "in the face of repeated demands by the accused for his disclosure" had committed reversible error. 353 U.S. 53, 64-65, 1 L. Ed. 2d 639, 647, 77 S. Ct. 623, 629-30.

■ Factors considered by Illinois courts in determining whether, under the balancing of rights test enunciated in *Roviaro,* a defendant's constitutional rights to intelligently prepare a defense and to receive a fair trial necessitate disclosure of information regarding the informant's identity and/or the contents of his communications to law-enforcement officials include whether the request for disclosure relates to the fundamental question of guilt or innocence rather than to the preliminary issue of probable cause (*McCray v. Illinois* (1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056; *People v. Williams* (1967), 38 Ill. 2d 150, 230 N.E.2d 214; *People v. Duncan* (1982), 104 Ill. App. 3d 701, 432 N.E.2d 1328; *People v. Gomez* (1978), 67 Ill. App. 3d 266, 384 N.E.2d 845; *People v. Lewis* (1973), 12 Ill. App. 3d 762, 301 N.E.2d 469, *affirmed* (1974), 57 Ill. 2d 232, 311 N.E.2d 685); whether the informant played an active role in the criminal occurrence, *i.e.,* whether he participated in and/or witnessed the offense (*People v. Chaney* (1976), 63 Ill. 2d 216, 347 N.E.2d 138; *People v. Lewis* (1974), 57 Ill. 2d 232, 311 N.E.2d 685; *People v. Zambetta* (1985), 132 Ill. App. 3d 740, 477 N.E.2d 821; *People v. Thornton* (1984), 125 Ill. App. 3d 316, 465 N.E.2d 1049; *People v. Gresham* (1981), 96 Ill. App. 3d 581, 421 N.E.2d 1053; *People v. Forsythe* (1980), 84 Ill. App. 3d 643, 406 N.E.2d 58), or assisted in setting up its commission (*People v. Chaney* (1976), 63 Ill. 2d 216, 347 N.E.2d 685; *People v. Coleman* (1984), 124 Ill. App. 3d 597, 464 N.E.2d 827; *People v. Gonzalez* (1980), 87 Ill. App. 3d 610, 410 N.E.2d 146; *People v. Gomez* (1978), 67 Ill. App. 3d 266, 384 N.E.2d 845; *People v. Downing* (1976), 37 Ill. App. 3d 297, 347 N.E.2d 848; *People v. Perez* (1974), 25 Ill. App. 3d 371, 323 N.E.2d 399)—as opposed to being merely a tipster who provided the police with infor-

mation regarding the crime—(*People v. Chaney* (1976), 63 Ill. 2d 216, 347 N.E.2d 685); and whether it has been shown that the informant's life or safety would likely be jeopardized by disclosure of his identity (*People v. Lewis* (1974), 57 Ill. 2d 232, 311 N.E.2d 685).

In the instant case, the trial court specifically recognized that "this [disclosure of an informant's identity] is an area where there must be a balancing" in ruling that, on the basis of the facts presented in defendant's affidavit, Vinnie could be of material assistance to defendant in the preparation of his entrapment defense and that, by refusing to comply with the disclosure order, the State was depriving defendant of his constitutional rights of confrontation and to prepare an adequate defense.

The State maintains, however, that the trial court's ruling was improper, arguing that even assuming the credibility of defendant's affidavit, "it does not present facts constituting entrapment as a matter of law," and it cites *Roviaro* as support for its position that "[i]n light of a [*sic*] strong policy reasoning behind the informant's privilege the court must impose upon defendant the burden of showing that the affirmative defense raised is founded on solid grounds establishing the defense as a matter of law rather than on spurious allegations, presented in discovery, of future intent to raise such defenses."

Upon close examination, the practical effect of the State's position, as we understand it, would be to impose upon defendant the burden of proving his affirmative defense and, thus, his innocence, since the raising of such a defense necessarily constitutes an admission by the defendant that he committed the crime for which he is being prosecuted. *People v. Terry* (1976), 38 Ill. App. 3d 795, 349 N.E.2d 129.

Neither *Roviaro* nor the numerous other cases cited by the State support this premise, which not only misstates the law but indeed is contrary to the fundamental constitutional principles of our criminal justice system. It is well settled that as with any other affirmative defense, in order to raise the defense of entrapment a defendant need only present some evidence thereon, whereupon it becomes incumbent upon the State to prove, in addition to each of the statutory elements of the offense, the absence of entrapment beyond a reasonable doubt. (Ill. Rev. Stat. 1983, ch. 38, par. 3—2(b); *People v. Tipton* (1980), 78 Ill. 2d 477, 401 N.E.2d 528; *People v. Dollen* (1972), 53 Ill. 2d 280, 290 N.E.2d 879; *People v. Dennis* (1981), 94 Ill. App. 3d 448, 418 N.E.2d 479; *People v. Dempsey* (1980), 82 Ill. App. 3d 699, 402 N.E.2d 924; *People v. Andreano* (1978), 64 Ill. App.

3d 551, 381 N.E.2d 783; See E. Cleary & M. Graham, Handbook of Illinois Evidence, secs. 303.1 through 303.3, 404.4 (3d ed 1979).) Although the legislature did not state how much evidence should be required, it is axiomatic that unless such evidence is sufficient to warrant submitting the issue to the jury and to raise a reasonable doubt as to defendant's guilt, it would be of no benefit to him. Ill. Ann. Stat. ch. 38, par. 3—2, Committee Comments (Smith-Hurd 1972).

■■ ■ In our view, the uncontradicted assertions contained in defendant's affidavit, as summarized above, were sufficient to raise the issue of entrapment. (See *e.g.*, *People v. Dempsey* (1980), 82 Ill. App. 3d 699, 402 N.E.2d 924.) Further, we agree with the trial court that on the basis thereof, defendant was entitled to disclosure of information regarding Vinnie for the purpose of preparing a defense founded on that theory.

While it is true that Vinnie was not physically present at the illegal transaction, neither did he act strictly as an informant in the sense that he merely provided police with information concerning the illegal occurrence. Indeed, in the light of defendant's account of Vinnie's involvement with him and his participation in the events leading up to the transaction—from their first meeting when Vinnie approached defendant at his place of employment and initiated a conversation about narcotics, to Vinnie's persistent appeals by telephone and in person for defendant's assistance in procuring cocaine and finally to Vinnie's arrangement of and presence at the meeting between defendant and "John," the undercover agent whom Vinnie introduced as his "partner," whereat John, after taking the small amount of cocaine which Vinnie had earlier refused, specifically requested that defendant supply him with two ounces more, emphasizing both then and in numerous telephone calls thereafter his urgent need for the cocaine, the increasing ire of his prepaid customers and his certainty, despite defendant's alleged protestations to the contrary and purported attempts to disassociate himself from the criminal enterprise, that defendant could obtain more cocaine if he "tried hard enough"—it appears that Vinnie, through a course of conduct spanning approximately three weeks, played a prominent, if not pivotal, role in laying the groundwork for the offense and, possibly, in inducing defendant to commit it (see *Sherman v. United States* (1958), 356 U.S. 369, 2 L. Ed. 2d 848, 78 S. Ct. 819 (in reversing defendant's conviction for the illegal sale of narcotics, the court held that the fact that the sales for which defendant was convicted occurred after a series of sales was of no significance since they were not independent acts subsequent to the inducement but, rather, part

of a course of conduct which was the product of the inducement)), and therefore, may have been of material assistance in the preparation and presentation of an entrapment defense.[1]

■ The State disputes that supposition, arguing that Vinnie's testimony would at best be cumulative and likely would serve to refute defendant's claims of inducement and lack of predisposition. We note, however, that unless the trial court or reviewing court finds, on the basis of the evidence presented, that defendant was entrapped as a matter of law, the question whether entrapment occurred is one ordinarily reserved for the jury. (*Sherman v. United States* (1958), 356 U.S. 369, 2 L. Ed. 2d 848, 78 S. Ct. 819; *People v. Tipton* (1980), 78 Ill. 2d 477, 401 N.E.2d 528; *People v. Andreano* (1978), 64 Ill. App. 3d 551, 381 N.E.2d 783.) Thus, the desirability of calling Vinnie as a witness, or at least interviewing him in preparation for trial, was a matter for defendant rather than the State to decide. *Roviaro v. United States* (1957), 353 U.S. 64, 1 L. Ed. 2d 639, 77 S. Ct. 623; *People v. Lewis* (1974), 57 Ill. 2d 232, 311 N.E.2d 685; *People v. Perez* (1974), 25 Ill. App. 3d 371, 323 N.E.2d 399.

Here, in denying defendant access to information which may have been relevant and helpful to his defense, while at the same time asserting the inadequacy of that proposed defense as grounds for refusing to comply with the disclosure order, the State not only frustrated the purpose of discovery but, in effect, acted as the self-appointed arbiter of defendant's constitutional rights. See *People v. Perez* (1974), 25 Ill. App. 3d 371, 374, 323 N.E.2d 399, 402.

■ As to the State's assertion that disclosure should not have been required because defendant did not establish that he was unable to locate Vinnie on his own, we note that by failing to raise this argument in the trial court, the State has waived it for purposes of review. In any event, there is nothing in the record before us to suggest that defendant had any knowledge of Vinnie's true identity or his address and, indeed, the one time he tried to reach Vinnie at the

---

[1]The State's comparison of this case to *People v. Thornton* (1984), 125 Ill. App. 3d 316, 465 N.E.2d 1049, is unpersuasive in that there was nothing in the facts to indicate, nor did defendant even claim, that the informant had participated in, helped to set up or induced him to commit the offense for which he was charged. Defendant argued only that the informant's participation in the initial drug transaction between him and the undercover police officer gave rise to the "possibility that he possessed knowledge relevant to an entrapment defense of the third sale" and thereafter raised entrapment only to the extent of arguing that the police officer had induced him to sell a larger amount of cocaine than he had offered during their negotiations.

telephone number Vinnie had given him a woman informed him that Vinnie was not there. This situation is clearly inapposite to that in *People v. Contursi* (1979), 73 Ill. App. 3d 458, 392 N.E.2d 331, cited by the State here, in which the issue was not whether the State should have been compelled to disclose the name and last known address of its informant but, rather, whether having offered to do so, it was under the additional obligation of physically producing him for examination by the defendants. The court held that where the informant's whereabouts are neither known to nor within the control of the State, failure to produce him does not constitute a denial of defendant's due process rights.

We likewise reject the State's assertion here that the disclosure order was improper because defendant failed to show that revelation of Vinnie's identity would not endanger his safety, for the reason that it is contrary to the decision in *People v. Lewis* (1974), 57 Ill. 2d 232, 311 N.E.2d 685, wherein our supreme court held that the burden of demonstrating that disclosure would place the informant in danger is on the prosecution, reasoning that otherwise, "a defendant would never be entitled to know the informer's identity, for [the State] could always claim that disclosure would place his life or health in jeopardy." Specifically, the court stated,

> "If the prosecution can establish that giving the name and address of the witness would jeopardize his health and safety, the informer's *true* name and address can be withheld. [Citations.] In light of such safeguards, and the fact that the defendants in cases such as these will already know the informer by sight and may already know him or her by the assumed name, it is unfair to refuse to afford a defendant the opportunity of deciding for himself whether or not the informer could provide testimony helpful to the defense. To deny access to the informer in such circumstances is to deny to a defendant his sixth amendment rights as established by *Roviaro*." (Emphasis added.) (57 Ill. 2d 232, 237, 311 N.E.2d 685, 688.) See also *People v. Coleman* (1984), 124 Ill. App. 3d 597, 464 N.E.2d 827.

The *Lewis* court observed that its holding conformed to the standards enunciated in *Roviaro* in that it "insure[s] that the defendant is not denied his constitutional rights and that the informer will be provided adequate protection to insure his health and safety, and [would] not diminish the ability of the State to use informers in the course of its narcotics investigations." *People v. Lewis* (1974), 57 Ill. 2d 232, 238, 311 N.E.2d 685, 689.

In summary, we conclude that under the circumstances of this case, the trial court properly granted defendant's motion for disclosure of information regarding the identity and whereabouts of the informant, "Vinnie." We further find that the dismissal of the indictment was warranted here where, after being informed by the trial court of its belief that dismissal was the only appropriate sanction, the State not only continued in its refusal to comply but, more significantly, made no argument against dismissal and offered no alternative sanction.

For the reasons stated, the order of the trial court is affirmed.

Affirmed.

LORENZ and MURRAY, JJ., concur.